DAVID M. KAUFMAN ASSOCIATES, INC., Plaintiff-Appellant, v. LAKE COUNTY TRUST COMPANY, as Trustee, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—1243

Opinion filed June 4, 1987.—Rehearing denied July 30, 1987.

JOHNSON, J., dissenting.

Joel L. Widman and Donald A. Smith, both of Chicago (Kazlicki, Widman, Goldberg, Schenk & Frankenstein, Ltd., of counsel), for appellant.

Richard P. Steinken, of Chicago (Jenner & Block, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

■ This is an action to recover real estate brokerage commissions by the plaintiff, David M. Kaufman Associates (Kaufman), from the defendants, collectively referred to as Smith. The ultimate issue on appeal is whether Kaufman has produced a ready, willing and able buyer to purchase the property upon terms proposed by Smith. It is undisputed that Smith produced a buyer. At issue, however, is the determination of what the terms proposed by Smith actually were and whether the buyer was ready, willing and able to accept those terms. (*Solomon v. Baron* (1984), 123 Ill. App. 3d 255, 259, 462 N.E.2d 756.) Smith filed a motion for summary judgment which was allowed. Kaufman also filed a motion for summary judgment which was denied. Kaufman appeals the summary judgment entered in favor of Smith, an issue that we will consider. Kaufman also attempts to appeal from the denial of its motion for summary judgment and asks this court to enter judgment in its favor. The denial of a motion for summary judgment, however, is not an appealable order; consequently, the arguments relating to that issue will not be considered. *Paulson v. Suson* (1981), 97 Ill. App. 3d 326, 328, 423 N.E.2d 243.

Smith's terms are explicated incrementally. Smith was the owner

of a four-building 395-unit apartment complex located in Merrillville, Indiana. Smith entered into a listing agreement on August 8, 1983, with a broker, The Cambridge Group, in which Smith authorized The Cambridge Group to offer the property for sale. The only terms were that Smith agreed to pay a commission of "three percent (3%) of the final agreed sales price." The seller did not wish to offer any financing. The commission would also be paid to any other cooperating broker to whom The Cambridge Group would forward the listing information. Kaufman was a cooperating broker who received the listing from Cambridge.

The terms were amplified upon on December 19, 1983. A letter was sent to The Cambridge Group by Smith's attorney which stated that Smith would "seriously consider selling" the property for $7,800,000. The letter contained other terms common in the closing of a real estate transaction, such as provisions for a title policy, disposition of personal property, earnest money, inspection of documents, plat of survey and a provision that the sale would be subject to all terms of mortgages, contracts and leases. The letter provided that all deeds and documents would be placed in escrow upon signing of a preliminary agreement or letter of intent.

Kaufman obtained a prospective purchaser, Marvin Heiman. On January 5, 1984, Smith's attorney further expanded upon the terms when he sent a letter of intent to the attorney for Heiman which stated that he was authorized by Smith to sell the property to Heiman under certain terms and conditions. The price was now listed as $8,000,000. Many of the other terms in the letter of intent were similar to the previous letter. The letter stated that a formal contract was to be prepared by the purchaser and tendered to Smith no later than January 16, 1984, and that Smith would have until January 19, 1984, to accept or reject the agreement. If the sellers were to reject the agreement, the letter of intent was to be null and void and have no legal effect.

Two terms of Smith's letter of intent are the focal point of this appeal. First, the letter of intent expanded upon the escrow in that it provided that, upon finalizing a formal agreement and an escrow agreement, the sellers would execute three letters of direction to the trustee assigning the beneficial interest of the sellers to the purchaser. It also provided that for the fourth trust the beneficial owners would deposit a direction to the trustee to execute a trustee's deed. Second, the letter provided that it should be the responsibility of the purchaser to obtain the approval of John Hancock Insurance Company relative to the assumption of existing mortgages. The letter of intent

was "accepted" and signed by Heiman and an earnest money deposit of $25,000 was given to Smith.

Kaufman submitted, in accordance with Smith's letter of intent, a formal real estate contract. It is at this point that Smith's terms and the determination of whether Kaufman was ready, willing and able to meet those terms becomes unclear. Smith's attorney, by way of letter, returned the earnest money deposit and informed Kaufman that Heiman's contract was unacceptable and that therefore the offer to sell was terminated. The property was subsequently sold to another purchaser.

■ The formal written contract which was submitted by Heiman was, as would be expected, more particular than the letter of intent. Smith had two major objections to the proposed formal contract. The first concerned the date of the delivery of the letters of direction and the second, whether or not the consent by the mortgagee must be in writing. Smith contends that Heiman was not a buyer ready to purchase the property on his terms because of these provisions in Heiman's contract. We believe the law to be that if there is a sufficient amount of certainty as to the essential terms in the agreement between Smith and Heiman, so that it can be concluded that the parties intended to make a bargain and, if the terms objected to by Smith are incidental or collateral terms, rather than essential terms, then Heiman was a ready, willing and able buyer. The incidental or collateral terms could be filled in by the court.

■ The issue of whether the parties' agreements are sufficient to conclude that there is a contract has been addressed by the Restatement (Second) of Contracts and Professor Corbin. Restatement (Second) of Contracts, section 33, deals with certainty. Comment *a* of that section states:

"Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract. If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." (Restatement (Second) of Contracts sec. 33, comment *a*, at 92 (1981).)

(See also *Cinman v. Reliance Federal Savings & Loan Association* (1987), 155 Ill. App. 3d 417, citing *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 67, 373 N.E.2d 1018.) In this case the letter of intent was indefinite as to the terms objected to and as to whether these terms should be characterized as incidental or essential. Nevertheless, this indefiniteness does not automatically imply that there was no meeting of the minds. "When parties are silent as to a material term, often

the reasonable conclusion is that they intended that the term be supplied by implication." (J. Calamari & J. Perillo, Contracts sec. 2—13, at 45 (1977).) Moreover, Professor Corbin has noted that all agreements have some degree of indefiniteness and some degree of uncertainty, yet:

"If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling in of some gaps that the parties have left. *** As between merchants, their usages and customary modes of expression and of doing business must be taken into account; their expressions often leave conscious gaps to be filled in this manner." (A. Corbin, Contracts sec. 95, at 144 (1952).)

Restatement (Second) of Contracts, section 204, says:

"Supplying an Omitted Essential Term

When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts sec. 204, at 96-97 (1981).

■■ As applied to this case, Smith's terms were embodied in three documents. First, the initial brokerage contract between Smith and Cambridge. This contract was uncertain as it contained virtually no terms. The brokerage contract became more certain, however, with the second document, the letter from Smith's lawyer. It became even more certain as to Smith's terms with the third document, the letter of intent from Smith to Heiman. While Smith and Heiman need not have actually entered into a contract for Kaufman to have earned his brokerage commission (*J. J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 407, 365 N.E.2d 721), if the parties under the facts of this case have sufficiently concluded a transaction or sufficiently defined their dealings as to amount to an enforceable contract, Kaufman would be entitled to his commission (*Bernard Klibanow & Co. v. Shafer* (1971), 2 Ill. App. 3d 392, 396, 276 N.E.2d 446). Smith effectively contends that these terms concerning the timing of the letters of direction and lack of a written consent from John Hancock were of such significance that Smith and Heiman had not reached a bargain or defined a contract. Kaufman effectively contends that they had indeed concluded a transaction or sufficiently defined the contract and that the questions concerning the letter of direction and written

consent of John Hancock were gaps that the courts could fill in using a standard of reasonableness.

■■ We are unable to say at this stage whether the terms Smith objected to were essential rather than incidental terms, so as to prevent the parties from reaching a bargain or defining a contract. The significance of these terms is not fully related in the briefs for this court to evaluate and to say, as a matter of law, that Heiman was not a ready, willing and able purchaser. If, after further proceedings, it is found that in fact the terms were incidental so that the parties had reached a contract or bargain, leaving only gaps to be filled in, then of course Kaufman had produced a buyer, Heiman, ready and willing to purchase on Smith's terms. If, in fact, these terms were essential and Smith had acted in good faith, then Kaufman had not produced a buyer ready to purchase on Smith's terms and Kaufman did not earn his commission.

For the above-stated reasons, this matter is reversed and remanded to the circuit court for proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

McMORROW, P.J., concurs.

JUSTICE JOHNSON, dissenting:

The majority holds that the record does not contain enough facts to determine, as a matter of law, "whether the terms Smith objected to were essential rather than incidental terms, so as to prevent the parties from reaching a bargain or defining a contract." (157 Ill. App. 3d at 931.) The majority concludes, therefore, that the trial court erred in entering summary judgment for Smith. I believe that summary judgment is appropriate in this case. The record shows that Smith and Heiman never reached agreement on essential terms to form a contract. Thus, Kaufman did not earn his commission because he never produced a buyer who was ready, willing, and able to buy on the seller's terms. I would affirm the judgment of the trial court. Consequently, I respectfully dissent.

When a plaintiff appeals from a trial court's entry of summary judgment for a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) If the docu-

ments that the trial court considers show that a genuine issue exists as to any material fact, summary judgment should not be granted. If fair-minded persons could draw different conclusions from the evidence, the issues should be submitted to the trier of fact to determine what conclusion seems most reasonable. Conversely, when the evidence shows that no genuine issue of material fact has been raised, the moving party is entitled to judgment as a matter of law. *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 231-32, 450 N.E.2d 756, 758.

Further, where a seller employs a broker to sell property, the broker earns his commission if he produces a buyer who is ready, willing, and able to buy the property on the seller's terms, even though the seller later refuses to perform on the contract. In such a case, however, the broker must prove the readiness, willingness, and ability of the buyer to purchase the property on the seller's terms. (*Solomon v. Baron* (1984), 123 Ill. App. 3d 255, 259, 462 N.E.2d 756, 759, quoting *Fox v. Ryan* (1909), 240 Ill. 391, 396, 88 N.E. 974, 976.) Although it is ordinarily a question of fact whether a broker has procured such a buyer, we have affirmed the entry of summary judgment where the pleadings and other materials show as a matter of law that the buyer did not comply with the seller's terms. 123 Ill. App. 3d 255, 259-60, 462 N.E.2d 756, 759.

I

Kaufman first claims that the letter of intent between Smith and Heiman was an enforceable contract. Kaufman contends that this contract proves that he produced a buyer, Heiman, who was ready, willing, and able to buy on Smith's terms. The majority holds that the record does not show, as a matter of law, whether the letter of intent amounted to an enforceable contract. I disagree.

A letter of intent is a document that embodies the essential terms of a contract, yet recites that the parties will execute a more formal agreement. The letter is enforceable if the parties intend it to be contractually binding. If the parties intend the letter to be binding, a mere recitation in the writing that a more formal agreement was yet to be drawn will not defeat their intent. *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1097-98, 407 N.E.2d 615, 618.

The parties may, however, specifically provide that negotiations are not binding until they, in fact, execute a formal agreement. If the parties construe the execution of a more formal agreement as a condition precedent, then no contract arises until they execute that formal agreement. Further, where the language of a contract is unambigu-

ous, its meaning is for the trial court to determine as a matter of law. 85 Ill. App. 3d 1094, 1098, 407 N.E.2d 615, 618-19.

The letter of intent in the instant case provided, in pertinent part, as follows:

> "9. Formal contract to be prepared by buyer—A formal contract shall be prepared by the Purchaser and tendered to the Sellers for signing no later than ***. If the Sellers reject the formal contract the letter of intent shall be null and void and shall have no legal effect and no action shall be brought to enforce same."

This provision shows that Smith and Heiman did not intend for the letter to bind them. The letter of intent provided that the buyer must prepare a contract, which the seller must accept. Importantly, the letter further provided that if the seller rejected the contract, then the letter was void. The letter of intent did not contain a mere recitation of a contract yet to be drawn. Rather, the letter explicitly required the buyer to prepare a more formal agreement that the seller must accept. I believe that the provision is unambiguous; thus, this court may construe it as a matter of law. I would hold, therefore, that the letter of intent between Smith and Heiman was not an enforceable contract.

## II

Kaufman alternately contends that he is entitled to his commission from Smith, even if the letter of intent between Smith and Heiman was not an enforceable contract, because he nevertheless produced a buyer who was ready, willing, and able to buy on the seller's terms. The majority holds that the record does not contain enough facts to determine, as a matter of law, that Smith and Heiman never reached agreement on essential facts, preventing them from forming a contract. I disagree.

To be enforceable, a contract's terms must be so definite and certain that a court can require the specific thing contracted for to be done. The terms must be clear, certain, and free from ambiguity and doubt. The contract need not provide for every collateral matter or every possible future contingency that might arise. It is sufficiently definite and certain if the court is able to ascertain what the parties agreed to do, from the contract's terms, under proper rules of construction and applicable principles of equity. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 130-31, 145 N.E.2d 644, 647-48.) Further, "[c]onstruction of a contract is a pure question of law and the court must determine this from the document's clear language." *Marvin N.*

*Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.* (1982), 107 Ill. App. 3d 442, 446, 437 N.E.2d 900, 903.

Applying these principles to the instant case, I conclude that Kaufman did not produce a buyer who would buy on the seller's terms. I believe that sufficient differences exist between the letter of intent and the final contract as to prevent a meeting of the minds. Viewing the entire record, I would hold, as a matter of law, that Smith and Heiman never formed a contract. Kaufman, therefore, did not produce a buyer who was ready, willing, and able to buy on the seller's terms and, thus, did not earn his commission.

For the foregoing reasons, I would affirm the judgment of the trial court.