BOYD REAL ESTATE, INC., *et al.*, Plaintiffs-Appellants, v. SHISSLER SEED COMPANY, INC., *et al.*, Defendants-Appellees.

Third District   Nos. 3—90—0432, 3—90—0433 cons.

Opinion filed May 10, 1991.

William K. Richardson and Terry Sharp, both of Law Office of Terry Sharp, P.C., of Mt. Vernon, for appellants.

Sutkowski & Washkuhn Associates, of Peoria (Gregory S. Bell, of counsel), for appellee Shissler Seed Company.

John C. Mulgrew, Jr., of Heyl, Royster, Voelker & Allen, of Peoria, for other appellees.

JUDGE HAASE delivered the opinion of the court:

The plaintiffs, Boyd Real Estate, Inc. (Boyd), and Allen and Cupi Real Estate, Inc. (Allen), filed suit against the defendants, Shissler Seed Co., Inc., Robert L. Potts, and Whitney and Potts, Ltd., to recover a real estate brokerage commission. The trial court granted the defendants' motions to dismiss Boyd and Allen's complaints. Boyd and Allen appeal.

The record reveals that on July 18, 1988, Shissler entered into a written uniform listing contract with Boyd which authorized Boyd to act as a real estate broker for Shissler. The exclusive six-month listing agreement gave Boyd the right to sell Shissler's 3,170-acre farm for $2,775,000. The agreement provided for a 5% commission if the deal was co-brokered. It further provided that the commission was to become due upon Boyd procuring a ready, willing and able buyer at the terms stated in the listing agreement or at any other price and terms agreed upon.

Thereafter, Boyd and Allen entered into a co-brokerage agreement regarding the property in question. They then located a prospective purchaser, Kambray Corp. (Kambray). On July 31, 1988, Kambray submitted a purchase agreement to Shissler.

Kambray representative James Hoffman stated in his deposition that after he and the representatives of Shissler had engaged in extensive negotiations regarding the terms of the proposed purchase agreement, Shissler orally agreed to a $3,050,000 purchase price. Shissler, however, wanted to discuss the legal language with its attorney before signing the document. Hoffman further stated that he had increased his original offer of $3 million by $50,000 because Shissler requested additional compensation for crops growing on the property.

It is undisputed that Shissler did not sign the proposed purchase agreement. According to Shissler representative Gene Shissler, he told Kambray at least twice that there would be no deal until he had a chance to discuss it with his attorney.

Thereafter, Shissler consulted its attorney, Robert L. Potts, who advised Shissler not to consummate the deal because the proposed agreement did not adequately reflect the value of the growing crops. Based on that advice, Shissler decided not to execute the purchase agreement.

The listing agreement and the proposed purchase agreement differed in several significant aspects. The purchase agreement contained additional terms which required Shissler to sell certain personal property, provide a title commitment, sell blueprints and other specifications regarding the personal and real property, pay all the sales tax due, and provide standard contracts for the farm crops. The purchase agreement provided for an October 5, 1988, possession date, while the listing agreement provided for a March 1, 1988, possession date. The purchase agreement further provided that Kambray's obligations were contingent upon a document review, property inspection, and the obtaining of financing. It also provided that Kambray could terminate the deal if the property was damaged by fire or other casualty prior to closing.

Boyd and Allen filed two separate complaints in an attempt to recover a commission. Their first complaint was brought against Shissler. The first count of that complaint alleged that Boyd and Allen procured a ready, willing, and able buyer as contemplated by the listing agreement. The second count alleged that Boyd and Allen earned their commission when Shissler and Kambray negotiated and agreed upon terms for the sale of the property. The second complaint was brought against attorney Potts. Count I of the second complaint alleged that Potts tortiously interfered with a contractual relationship. Count II alleged that Potts tortiously interfered with a prospective economic advantage.

The trial court granted the defendants' motions to dismiss Boyd and Allen's second amended complaint against Shissler. The court also denied Boyd and Allen's motion to reconsider. In so doing, the court found that the outcome of the first count of the complaint against Shissler was controlled by *Sharky v. Snow* (1973), 13 Ill. App. 3d 448, 300 N.E.2d 279, which provides that a broker, to state a cause of action based on a listing agreement, must allege that he procured a ready, willing, and able buyer under the terms of the listing agreement and no others. The court further found that the second count failed to state a cause of action, citing *D.M. Kaufman Associates, Inc. v. Lake County Trust Co.* (1987), 157 Ill. App. 3d 926, 510 N.E.2d 919.

On appeal, Boyd and Allen first argue that the trial court erred in granting Shissler's motion to dismiss. They contend that they stated a cause of action when they alleged that they procured a prospective buyer, who proposed a written purchase contract and entered into negotiations *vis-a-vis* the seller regarding the terms of that contract, and the seller orally agreed to the terms.

■ In *Sharkey v. Snow* (1973), 13 Ill. App. 3d 448, 300 N.E.2d 279, the court held that a broker failed to earn a commission where he produced a buyer who proposed a purchase agreement with terms that differed from the listing agreement. The differences included additional terms in the listing agreement for the sale of personal property and a requirement that the seller purchase title insurance.

■ In the instant case, the terms of the listing agreement and the purchase agreement differed in ways similar to the differences in *Sharkey*. Moreover, we note that Boyd and Allen failed to allege that they procured a purchaser under the terms of the listing agreement. Appellants, in oral argument, requested that this court overrule the holding in *Sharkey v. Snow*. We decline to do so. No adequate reason has been put forth to overrule the long-standing law of Illinois on this subject. Accordingly, the trial court properly dismissed the first count of the complaint against Shissler.

We next turn to the trial court's dismissal of the second count of the complaint against Shissler. Boyd and Allen contend that even though Kambray's terms differed from the listing agreement, they nevertheless stated a cause of action by alleging that Shissler orally agreed to the terms of Kambray's proposed purchase agreement.

In response, Shissler contends that where the terms of the listing agreement and the proposed contract differ, the buyer and seller must enter into an enforceable contract for the broker to earn a commission. (*Wilson v. Mason* (1895), 158 Ill. 304.) It argues that since it declined to sign the document and enter into an enforceable contract, the broker did not earn a commission.

■ We note that Illinois courts have held that it is not essential that an executed written agreement actually be entered into for a broker to earn a commission, since the seller becomes bound at the moment his terms have been met. (*Wolfenberger v. Madison* (1976), 43 Ill. App. 3d 813, 357 N.E.2d 656; *Garret v. Babb* (1975), 24 Ill. App. 3d 941, 322 N.E.2d 217.) In *Wolfenberger*, the court stated that the rule announced in *Wilson*, requiring an enforceable contract, was *dicta*. The *Wolfenberger* court further stated that the *Wilson* rule was inapplicable when the seller was at fault.

We further note that in the cases cited by the appellant, holding that enforceable contracts were not required, the brokers procured ready, willing, and able purchasers under the terms of the listing agreements. In both *Wolfenberger* and *Garrett* the sellers' terms were clearly stated in the listing agreements (in *Wolfenberger* a written listing agreement and in *Garrett* an oral listing agreement) and the purchasers were ready, willing, and able to meet those terms, yet the

sellers refused to execute purchase contracts. Thus, the brokers earned their commissions in those two cases under the rule in *Sharkey* regardless of whether purchase contracts were executed. In the present case, however, the terms orally agreed upon by Shissler and Kambray were not the same as the terms specified in the listing agreement. Accordingly, *Wolfenberger* and *Garrett* are inapposite.

In *D.M. Kaufman Associates, Inc. v. Lake County Trust Co.* (1987), 157 Ill. App. 3d 926, 510 N.E.2d 919, relied upon by the trial court, the seller sent a letter of intent to the buyer's attorney. The letter of intent included the seller's terms and stated that a formal contract was to be prepared by the purchaser. It further provided that if·the seller rejected the agreement, the letter of intent was to have no legal effect. Thereafter,. the purchaser "accepted" the letter of intent, drafted a contract, and sent the contract to the seller. The seller rejected the agreement because two additional terms were unacceptable. The *Kaufman* court noted that if the parties under the facts of the case sufficiently defined their dealings as to amount to an enforceable contract, the broker would be entitled to a commission. The court reversed and remanded the cause for further proceedings to determine whether the terms the seller objected to were essential or incidental. If they were essential, then there was not an enforceable contract.

■ Under the circumstances of the present case, we find that *Sharkey, Wilson,* and *Kaufman* are controlling and require that the purchaser and seller must have actually entered into an enforceable contract for the broker to earn a commission. In *Kaufman,* the seller submitted a signed writing with his terms to the purchaser. Here, we do not have a signed agreement purporting to bind the seller. Boyd and Allen failed to cite any case law holding that a broker is entitled to a commission where he procured a prospective purchaser under terms different than the listing agreement and thereafter the seller and purchaser orally agreed to terms, but the seller refused to enter into an enforceable contract. Since it is undisputed that the seller and purchaser did not enter into an enforceable contract, the trial court properly granted Shissler's motion to dismiss.

Boyd and Allen next argue that the trial court improperly dismissed their complaint against attorney Potts because they failed to state a cause of action.

■ We disagree. Attorney Potts' communication to Shissler advising it not to execute the contract was privileged. Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third per-

sons. (*Schott v. Glover* (1982), 109 Ill. App. 3d 230, 440 N.E.2d 376.) An unqualified privilege can be overcome by showing actual malice to harm a third party. (*Schott v. Glover* (1982), 109 Ill. App. 3d 230, 440 N.E.2d 376.) Here, however, the plaintiffs did not allege actual malice and nothing in the pleadings or depositions indicates actual malice. Accordingly, the trial court properly dismissed the complaint against Potts for failure to state a cause of action.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.