**Douglas R. PRINCE, Plaintiff–Appellant,**

v.

**Daniel A. ZAZOVE, William A. Brandt Jr., the Official Unsecured Creditors' Committee of Douglas R. Prince and Jane Prince, Richard Schweickert, Chamlin & Associates, Cantwell, Smith & Van Daele, Stephen E. Smith, Paul Root, Neil M. Richter, Arthur S. Levine, Arthur S. Levine & Assoc., Developmental Properties Construction and Wayne Dalton, Defendants–Appellees.**

No. 91–1800.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1992.

Decided April 6, 1992.

---

James J. Stamos, argued, Annette J. Regos, Stamos & Trucco, Chicago, Ill., for plaintiff-appellant.

Michael T. Brody, argued, Larry M. Wolfson, Jenner & Block, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr. and KANNE, Circuit Judges, and SHARP,* District Judge.

ALLEN SHARP, District Judge.

## I.

Basically, this is a cat fight between two dentists over the aborted sale of a dental

* The Honorable Allen Sharp, Chief Judge, United States District Court for the Northern District of

practice, and an attorney for the Creditors' Committee of one of the bankrupt dentists, Daniel A. Zazove, gets in the middle of it.

To refine these generalizations slightly, the appellant, Douglas R. Prince, is an orthodontist who has quite literally gone on the road, starting in New York and ending in North Dakota. While in Illinois, he filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 et seq., in the United States District Court for the Northern District of Illinois in 1981. A plan of reorganization was confirmed in that bankruptcy court in 1983 by which Dr. Prince retained ownership of his Illinois orthodontic practice in exchange for a payment to the Creditors' Committee equal to the value of the practice, net of its liabilities.

Dr. Prince represented the value of the practice, net of its debt, at $7,500.00. The Plan recited Dr. Prince's opinion of the value, but provided that if the debtor and the Creditors' Committee were not able to agree on the value of the practice, the bankruptcy court would conduct a valuation hearing to determine the same.

However, Dr. Prince, having come from the east, decided to move on to the great plains of North Dakota. In April 1983, Dr. Prince bought a practice consisting of two offices in North Dakota for $300,000.00, and for a time commuted between his practices in North Dakota and the Chicago area. However, by the fall of 1983, Dr. Prince decided to stop commuting and practice full time in North Dakota. Prior to the confirmation of the plan of reorganization in 1983, Dr. Prince advertised in a professional publication that his Illinois practice was for sale. Significantly, he chose not to disclose this important fact to the bankruptcy court, the Creditors' Committee or its representatives. None of these entities were advised by Dr. Prince that he had indeed acquired a practice in North Dakota, neither were they advised that he was attempting to sell his practice in Illinois.

Indiana, sitting by designation.

Enter Timothy Clare, D.D.S. After a series of meetings and negotiations, Dr. Prince entered into a written contract to sell the Chicago practice to Dr. Clare for approximately $600,000.00 over time. To no one's great surprise, this Clare–Prince agreement turned totally sour, resulting in acrimonious legal maneuvers and disgusting personal conduct by these two alleged professionals.

At the time Dr. Prince entered into this contract with Dr. Clare, he specifically requested that Dr. Clare *not* tell either appellee Zazove, representing the Creditors' Committee, or anyone else associated with the bankruptcy about the existence of their contractual arrangement. However, Zazove and the Creditors' Committee became aware of the existence of Dr. Clare in June, 1984, when Dr. Clare's attorney, Patrick Kinnally, called Zazove to request information about the Prince bankruptcy. A telephone conversation ensued on July 3, 1984, in which Attorney Kinnally, on behalf of Dr. Clare, requested that Zazove write a letter describing to him the bankruptcy proceedings and authorizing Dr. Clare to preserve the value of the practice. That letter, in its entirety, is attached as an appendix to this opinion. Soon after July 4, 1984, Dr. Clare advised Dr. Prince that he, Dr. Prince, was not to enter the office. When Dr. Prince attempted entry, Dr. Clare called the police after which Dr. Prince promptly left. Protracted and acrimonious negotiations continued between these two dentists and their attorneys. Shortly thereafter, Dr. Prince and Dr. Clare, through their attorneys, negotiated a standstill agreement at a meeting attended by Zazove. After the aforesaid meeting, Zazove promptly filed an adversary complaint in the bankruptcy court to obtain court approval of the sale of the Chicago practice to Dr. Clare. However, before that complaint could be ruled on, Dr. Clare withdrew his offer to purchase. The district court ultimately ruled that the Creditors' Committee had no direct ownership interest in Dr. Prince's Chicago practice and granted summary judgment in favor of Dr. Prince and against the Committee on the Committee's claim that it was entitled to ownership of the practice.

On June 30, 1989, just days short of five years after Zazove wrote his July 3, 1984 letter, Dr. Prince filed the present action against Zazove, William A. Brandt, Jr., the Creditors' Committee's agent, and the individual members of the Creditors' Committee, purporting to allege a state law tort claim for tortious interference with contract. It is undisputed that the substantive law of the State of Illinois applies to that aspect of this case.

## II.

Under Illinois law, the elements of a tortious interference with contract claim are as follows: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *Wheel Masters, Inc. v. Jiffy Metal Products Company*, 955 F.2d 1126, 1129 (7th Cir.1992); *George A. Fuller Co., Div. of Northrop Corp. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330–31 (7th Cir.1983), and *Certified Mechanical Contractors, Inc. v. Wight & Co.*, 162 Ill.App.3d 391, 515 N.E.2d 1047, 113 Ill.Dec. 888 (2d Dist.1987). However, a party who interferes with another party's contract is nonetheless privileged from liability where the party acts "to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved." *Langer v. Becker*, 176 Ill. App.3d 745, 531 N.E.2d 830, 833, 126 Ill. Dec. 203, 206 (1st Dist.1988). Under such Illinois law, an attorney is privileged to advise a client and to take action on a client's behalf. *Boyd Real Estate, Inc. v. Shissler Seed Co.*, 213 Ill.App.3d 648, 571 N.E.2d 1171, 1174, 157 Ill.Dec. 152, 155 (3d Dist.1991).

After discovery was completed, the defendants there, appellees here, moved for

summary judgment under Rule 56 of the Federal Rules of Civil Procedure. In moving for summary judgment, the defendants raised four issues. First they asked the court to find that the interference with the Prince–Clare contract was privileged. Second, they argued that no evidence implicated the Committee members or Mr. Brandt. Third, they argued that they were immune from liability as quasi-judicial officers. Fourth, they asserted that the "learned intermediary" doctrine applied to avoid liability. On March 6, 1991, the district court granted summary judgment as to the Committee members and Brandt on the basis that they committed no tortious acts.[1] The district court did not address whether they were vicariously liable for Zazove's conduct. The court then found in favor of Zazove and the Committee by determining that they were immune from liability because Zazove had acted reasonably under the circumstances in interfering with the contract and had not acted with malice, thus satisfying the elements of the conditional privilege in Illinois. At issue in this appeal is whether the district court improperly granted summary judgment in favor of the defendants-appellees.

### III.

We review a grant of summary judgment de novo. *Pro–Eco, Inc. v. Board of Commissioners of Jay County, Indiana,* 956 F.2d 635, 637 (7th Cir.1992); *Santella v. Chicago,* 936 F.2d 328, 331 (7th Cir.1991), and *First Wisconsin Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). In examining a grant of summary judgment, we must " 'view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.' " *Pro–Eco,* 956 F.2d at 637; *Kreutzer v. A.O. Smith Corporation,* 951 F.2d 739, 743 (7th Cir.1991) (quoting *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990)).

### IV.

As another preliminary, we deem it necessary to briefly describe the function of the Creditors' Committee, a creature of 11 U.S.C. §§ 1102 and 1103, which read in pertinent part:

### § 1102. Creditors' and equity security holders' committees

(a)(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

(b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was ·fairly chosen and is representative of the different kinds of claims to be represented.

### § 1103. Powers and duties of committees

(a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

(b) An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the

---

**1.** Dr. Prince agrees that the district court's ruling was correct only as to William A. Brandt, Jr.

case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

(c) A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

(5) perform such other services as are in the interest of those represented.

(d) As soon as practicable after the appointment of a committee under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.

Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2627.

The proper scope of that Committee's function is well illustrated in *Secon Service System, Inc. v. St. Joseph Bank and Trust Co.*, 855 F.2d 406 (7th Cir.1988), and *Re Gaslight Club, Inc.*, 782 F.2d 767 (7th Cir. 1986). (Interestingly, Attorney Daniel Zazove was appointed as retained counsel for the Committee there also.).

The concerns reflected in the letter of July 3, 1984 are well within the statutory authority conferred by sections 1102 and 1103. In fact, failure to be concerned about assets that *might* be included in the debtor estate could well reflect a failure to meet these statutory demands.

The essential assertion of Dr. Prince on appeal is that a factual question existed as to whether Zazove's conduct was unreasonable under the circumstances, and thus, the district court, by deciding the factual issue as a matter of law, invaded the province of the jury.

The appellees answer this argument by citing and relying on *Toys "R" Us, Inc. v. NBD Trust Co.*, 904 F.2d 1172 (7th Cir. 1990). More on that one later. The appellees assert that the undisputed facts demonstrate that the Creditors' Committee through Zazove acted reasonably as a matter of law in its dealings in regard to the highly charged and convoluted Prince–Clare agreement and dispute. In this regard, they recite the following four points:

1. First, in February 1984, Dr. Prince took steps to assure that his sale of the practice to Dr. Clare would not be disclosed to anyone involved in his bankruptcy proceeding. Not only did he not disclose the contract or the sale price to anyone associated with his bankruptcy, Dr. Prince took affirmative steps to conceal the facts from the Creditors' Committee, Mr. Zazove, and the bankruptcy court. The district court found that the secrecy surrounding the Prince–Clare contract reasonably suggested to Mr. Zazove that the plaintiff was attempting to defraud the creditors.

2. As a result of Dr. Prince's secrecy, the Creditors' Committee was unable to respond in any other than an emergency situation. On July 3, 1984, the Creditors' Committee learned for the first time that the practice on which it was relying to obtain full value for the creditors had in fact been sold to Dr. Clare. Dr. Clare's attorney stated that unless steps were taken immediately, the practice would be of no value.

3. In responding on behalf of the Creditors' Committee to the emergency it faced, Mr. Zazove acted solely to protect the interests of the creditors. He took steps to preserve the value of the professional corporation, which the creditors relied upon to satisfy Dr. Prince's obligations to them.

4. Mr. Zazove took two steps on behalf of the Creditors' Committee in re-

sponse to this emergency. Both steps were measured, reasonable efforts to serve the interests of the creditors he represented. First, as requested by Dr. Clare's attorney, he wrote and advised Dr. Clare's attorney to preserve the status quo until Zazove could seek relief in the bankruptcy court. Second, Zazove promptly sought relief in the bankruptcy court by filing an adversary complaint only days after the letter of July 3.

■ The appellees correctly assert that in order for Dr. Prince to overcome a conditional privilege, he must, under the prevailing law of Illinois, prove actual malice. In *Arlington Heights National Bank v. Arlington Heights Federal Savings and Loan Association*, 37 Ill.2d 546, 229 N.E.2d 514, 518 (1967), the Illinois Supreme Court held that a plaintiff must show more than ill will to overcome a conditional privilege. The evidence must show that the defendant acted with a desire to harm unrelated to the interest that the defendant was presumably seeking to protect. *Id.* The plaintiff responds to this Illinois Supreme Court case by citing a later Illinois appellate court case, *Getschow v. Commonwealth Edison Company*, 111 Ill. App.3d 522, 444 N.E.2d 579, 582, 67 Ill.Dec. 343, 346 (1st Dist.1982) *aff'd in part and rev'd in part*, 99 Ill.2d 528, 77 Ill.Dec. 83, 459 N.E.2d 1332 (1984). However, the composite effect of *Arlington* and its various progeny is that actual malice is indeed required to overcome a conditional privilege under the law of Illinois.

■ Moreover, the whole *Getschow* story has not been fully told due to the appellant's failure to disclose the proceedings in the Supreme Court of Illinois and especially the Per Curiam opinion reported at 111 Ill.App.3d 522, 444 N.E.2d 579, 67 Ill.Dec. 343:

> In this case a judge of this court has recused himself and the remaining members of the court are divided in their views of the case concerning whether the award of compensatory damages should be affirmed, so that the constitutionally required concurrence of four judges cannot be secured. (See Ill. Const.1970, art.

VI, sec. 3.) Under these circumstances, we shall let stand the portion of the judgment of the Appellate Court, First District, which affirmed the circuit court's award of compensatory damages in the sum of $270,000. As to the above portion of this order, see *Perlman v. First National Bank of Chicago* (1975), 60 Ill.2d 529, 530, 331 N.E.2d 65. However, four judges of this court are of the opinion that the appellate court erred in its affirmance of the circuit court's award of punitive damages in the sum of $25,000. Therefore, the portion of the appellate court judgment which affirmed the circuit court's award of punitive damages is reversed, and this cause is remanded to the circuit court of Cook County with directions to modify its judgment in accordance with this order.

More recently, Illinois appellate courts have followed *Arlington Heights*. *See Salaymeh v. InterQual, Inc.*, 155 Ill.App.3d 1040, 508 N.E.2d 1155, 108 Ill.Dec. 578 (5th Dist.1987), and *Hanzel Construction, Inc. v. Wehde & Southwick, Inc.*, 130 Ill.App.3d 196, 474 N.E.2d 38, 43, 85 Ill.Dec. 624, 629 (2d Dist.1985).

More relevant than *Toys "R" Us*, 904 F.2d at 1172, is the precise language of Judge Cummings in *Gasbarro v. Lever Brothers Co.*, 490 F.2d 424, 426 (7th Cir. 1973):

> "The parties have treated this diversity case as governed by Illinois law, because any injury to plaintiff was suffered in this state. In a tort action for interference with contract or other business relationships, or for defamation, if the alleged wrongful conduct is conditionally privileged, a plaintiff must show actual malice on the part of defendant in order to sustain his cause of action in Illinois."

*Citing Arlington Heights*, 37 Ill.2d at 551, 229 N.E.2d at 514. This appellant has simply failed to meet that burden.

## IV.

The jurisdictional basis of this action in the United States District Court for the Northern District of Illinois was under 28 U.S.C. § 1332, diversity of citizenship, and

the substantive law of Illinois applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 548, 78 S.Ct. 893, 906, 2 L.Ed.2d 953 (1958) and *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). It is not for this court to decide definitively if there is tension between the decision of the Supreme Court of Illinois in *Arlington* in 1967 and with one of the appellate courts of Illinois in *Getschow* in 1982. It is to be noted, however, that this court did indeed cite *Getschow* in *Toys "R" Us*, 904 F.2d at 1172, which this panel does not conceive to be compelling authority for this appellant. Our reading of *Arlington Heights* comports with earlier decisions of this court and supports the result here announced. *See Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643 (7th Cir.1983), and *Gasbarro v. Lever Brothers Co.*, 490 F.2d at 424.

This record does not entitle Dr. Prince to go before a trier of fact on the issue of malice, whether it be described under *Arlington* or even if described significantly different under *Getschow* standards. Summary judgment is appropriate in either case.

## V.

Dr. Prince concedes that none of the individual committee members were directly involved in the alleged tortious actions. Nevertheless, he asserts that the individual members of the Creditors' Committee are vicariously liable for the torts committed by or on behalf of the Creditors' Committee. The district court held that Dr. Prince had failed to prove critical elements of his prima facie case against individual members of the Creditors' Committee and concluded that there was no evidence that any of the individual members of the Creditors' Committee were aware of the contract or in any way caused Dr. Clare to breach the contract. Thus, the district court granted summary judgment to the individual defendants.

 While a corporation can be held liable for the acts of its agents, the directors or officers cannot be held individually liable unless they participated in the conduct giving rise to that liability. *Musikiwamba v. Essi, Inc.*, 760 F.2d 740 (7th Cir.1985). To prevail on his claim for vicarious liability against the members of the Creditors' Committee, Dr. Prince must allege and prove that the individual members of the Committee were personally involved in the breach of the so called Prince–Clare agreement. In his brief at page 21, Dr. Prince concedes that the Creditors' Committee members were not directly involved in Zazove's alleged tortious actions but tries to find salvation in *In re Tucker Freight Lines, Inc.*, 62 B.R. 213 (Bkrtcy. W.D.Mich.1986). *Tucker* is not a binding precedent on this court, but more importantly, it is clearly distinguishable on its facts. In *Tucker*, the plaintiff alleged that the defendants, individual members of a Creditors' Committee, unlawfully and intentionally or recklessly committed tortious acts which resulted in the denial of confirmation of the debtors. Not so here.

All of these appellees for the various reasons here stated were entitled to summary judgment as a matter of law. The district court made no error in granting the same and such is affirmed. Costs on appeal are assessed against the appellant.

AFFIRMED.

### APPENDIX

Law Offices

TOWBIN & ZAZOVE, LTD.
120 South LaSalle Street
Suite 850
Chicago, Illinois 60603
(312) 621–1900

July 3, 1984

Patrick M. Kinnally, Esq.
Murphy, Hupp, Foote and Mielke
North Island Center
P.O. Box 1327
Aurora, IL 60507

Re: *Douglas R. Prince and Jane Prince/ Case No. 81 B 9964*

*Purchase of Assets of Professional Corporation by Timothy J. Clare, D.D.S.*

Dear Mr. Kinnally:

This letter will confirm our conversation of this date that I represent the Creditors' Committee of the above-named debtor. Pursuant to the debtors' confirmed Plan of Reorganization, the stock of his professional corporation is an asset to be administered for the benefit of creditors.

You have advised me that without court authority, Dr. Prince has signed an agreement with Dr. Clare (dated February 25, 1984) to sell of [sic] of his stock and/or assets of Douglas R. Prince, D.D.S., M.S., Ltd. This transaction was undertaken without the knowledge or consent of the Creditors' Committee, or its agent, William A. Brandt, Jr.

You further advised us that Dr. Clare is presently operating the professional practice on a day-to-day basis.

Please be advised that the Committee hereby authorized Dr. Clare to take all action necessary or appropriate to protect and preserve this asset until it can be sold to Dr. Clare by appropriate order of the Bankruptcy Court. Such action may include changing the locks in the office and removing by force, if necessary, Dr. Prince from the premises.

It is my understanding that you will prepare and submit an offer to purchase the stock or certain of the assets of the professional corporation within the next ten days.

 Very truly yours,
 /s/ Daniel A. Zazove
 Daniel A. Zazove

DAZ/dmv

cc: William A. Brandt, Jr.
 All Members of the Creditors' Committee

 Defendants' DEP. EX. NO. 6
 FOR ID., AS OF 9–26–90

 Plaintiff's DEP. EX. NO. 2
 7–11–90