2023 IL App (1st) 1220489-U

FIFTH DIVISION
March 10, 2023

No. 1-22-0489

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| RAY ANTHONY BAYLOCK, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2020 L 11428 |
| | ) | |
| ACIA AG AUTO, LLC d/b/a Grossinger City Autoplex, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    ***Held***:  We affirm the circuit court's order granting summary judgment in favor of the employer, because the employee did not present any evidence that he and his employer entered into a modified compensation plan that would have provided him with additional compensation beyond the scope of his existing compensation structure. Because there was no evidence of a modified compensation plan, the employee had no viable claim under the Wage Payment and Collection Act.

¶ 2    Plaintiff Ray Baylock filed suit pursuant to the Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 *et seq*. (West 2018)) against his former employer, Acia AG Auto, LLC,

alleging that Acia owed him wages in the form of sales commissions and that the employer retaliatorily terminated him after he asked to be paid certain additional commissions. After discovery, Acia moved for summary judgment, which the circuit court granted, finding Baylock failed to present evidence that he and Acia entered into an agreement that he would be paid additional commissions. The circuit court also found that Baylock's retaliation claim failed because he presented no evidence to show that there was a Wage Act agreement in the first place. Baylock appeals the circuit court's order granting summary judgment. We affirm.

¶ 3                                    BACKGROUND

¶ 4      Acia employed Baylock as a general sales manager at its Cadillac/Chevrolet dealership. The terms of his remuneration were set forth in a contract. Under the contract, Baylock was paid either $15,000 per month or a percentage of his total sales for that month, whichever was greater.

¶ 5      On January 16, 2019, during Baylock's employment as a general sales manager, Reena Spurrier, vice president of financial services at Acia, copied him on an email in which she asked another employee, Santino, to fill in as the finance and insurance manager (F&I manager) at Acia's Toyota dealership. Baylock responded to Spurrier's email, expressing his willingness to cover the F&I manager role at Toyota. Spurrier responded enthusiastically to Baylock's offer, and Baylock began working at the Toyota dealership.

¶ 6      At the end of his first day at the Toyota dealership, Baylock emailed Spurrier to tell her that he had "Just over 10k on 3 deals in finance at Toyota." Spurrier responded, "Your [sic] my HERO!! The gross on those deals do not go in Santino's name-I will be paying YOU on them. Thank you!!!" Baylock, while still employed as a general sales manager, continued to fill in the F&I manager role at the Toyota dealership for the next four months. It is undisputed that Baylock continued to receive $15,000 per month while he filled in for the F&I manager role at Toyota.

2

¶ 7    On May 17, 2019, Baylock met with David Downhour, Acia's director of human resources, and Tamara Darvish, Acia's president of operations. At the meeting, Baylock argued that he should receive additional compensation for his work at the Toyota dealership. Darvish countered that there was no agreement that Baylock would be paid anything beyond the scope of his compensation plan as a general sales manager. Darvish also expressed her belief that the general sales manager position was not a good fit for Baylock. Baylock asked whether he was being fired, to which Darvish replied that he was not, but she suggested that other positions may be a better fit. The meeting concluded, and Downhour told Baylock to call him if he is interested in other positions with Acia. On May 20, 2019, Baylock emailed Downhour to ask whether a finance position was available. Downhour responded, asking Baylock to "give [him] some time". On May 23, 2019, Downhour received a notice that Baylock had filed for unemployment benefits.

¶ 8    Believing he was not paid what he was owed under this purported agreement with Acia, Baylock sued Acia under the Wage Act. The operative complaint in this case is Baylock's first amended complaint, which contained two counts: (1) a claim for unpaid commissions allegedly due to him, and (2) a claim for damages for his alleged retaliatory discharge from Acia for filing the Wage Act claim. The dollar amount of the commissions allegedly owed to Baylock does not appear in the complaint. However, at his deposition, Baylock testified that his total sales at the Toyota dealership amounted to $169,477.85. He further averred that 17% commission was the "low-end" average that Acia would pay its F&I managers for their sales. Thus, the amount at issue appears to be $28,811.23 (17% of $169,477.85).

¶ 9    After discovery, Acia moved for summary judgment, arguing that there was no compensation plan other than Baylock's existing plan as a general sales manager, and Baylock failed to produce any evidence of the material terms of the purported modified agreement,

including the amount of compensation. Acia also argued that Baylock's claim for retaliatory discharge must fail because Baylock was neither terminated nor offered a less lucrative alternative position with Acia. Baylock responded, countering that he did produce evidence of a modified agreement in the form of the email exchange with Spurrier. Baylock also countered that he was told he was being fired at the May 17, 2019 meeting.

¶ 10    The circuit court granted Acia's motion for summary judgment. With respect to the wage claim, the court held that Acia was entitled to summary judgment because Baylock presented no evidence that he entered into an agreement with Acia that would provide him any additional compensation. The court also held that the retaliation claim could not survive summary judgment because there was no viable wage claim on the basis of which Acia could retaliate against Baylock. This appeal followed.

¶ 11                                ANALYSIS

¶ 12    On appeal, Baylock argues that the circuit court erred in: (1) finding no evidence of the existence of a Wage Act agreement; and (2) dismissing Baylock's retaliation claim under the Wage Act.

¶ 13    We first address jurisdiction. A reviewing court has an independent duty to consider its own jurisdiction, whether or not the parties have raised it as an issue, before proceeding to the merits of the case. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) (citing *People v. Smith,* 228 Ill. 2d 95, 106 (2008), and *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)).

¶ 14    Baylock asserts that his appeal is grounded in Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Rule 304 governs appeals from judgments that do not dispose of an entire proceeding. Rule 304(a) provides that, "[i]f multiple parties or multiple claims for relief are

involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." *Id.* A circuit court order, such as the one at issue here, which does not contain a specific written finding that there is "no just reason for delaying either enforcement or appeal", is unappealable under Rule 304(a). See *Henyard v. Municipal Officers of Village of Dolton*, 2022 IL App (1st) 220898, ¶ 23. However, because the order at issue disposed of all issues in this case, it is appealable under Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 15    In his brief, Baylock initially erroneously asserts that our standard of review is abuse of discretion, but he later pivots to the correct standard in his "Standard of Review" section. Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure. 735 ILCS 5/2-1005 (West 2018). Under section 5/2-1005(c), summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*; *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. We review appeals from summary judgment rulings *de novo*. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 16    Baylock's first contention of error is that the circuit court incorrectly found no evidence of a Wage Act agreement. We have recognized the following as the fundamental principles of the Wage Act:

> "In 1973, the Illinois General Assembly enacted the Wage Act to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers. See S. Miller, *Minimum Guaranteed Rights Under the Illinois Wage Payment and Collection Act,* 81 Ill. B.J. 194, 195 (1993).

Upon an employee's separation, an employer is required to pay the full amount of the employee's final compensation within the next regularly scheduled pay period. 820 ILCS 115/5 (West 1992). An employer convicted under the Act for intentionally withholding or delaying the payment of wages or final compensation is guilty of a Class C misdemeanor. 820 ILCS 115/14(a) (West 1992). The Wage Act defines wages or final compensation as 'any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties.' 820 ILCS 115/2 (West 1992). Claims for wages or final compensation are thus akin to breach of contract actions." *Doherty v. Kahn*, 289 Ill. App. 3d 544, 557–58 (1997).

¶ 17   At its core, a Wage Act claim is akin to a breach of contract claim, and it requires proof of the same essential elements. To succeed in a breach of contract claim, the plaintiff must show: (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach. *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. The terms of an agreement, if unambiguous, should generally be enforced as they appear, and those terms will control the rights of the parties. *Dowd & Dowd, Ltd. v. Gleason,* 181 Ill. 2d 460, 479 (1998). Parties are free to modify the terms of an existing contract by mutual assent, provided that the modification does not violate the law or public policy. *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶37.

¶ 18   The first element in a breach of contract claim is the existence of a valid and enforceable contract. Agreements under the Wage Act are not bound by all the strictures of traditional contract law. A Wage Act agreement is "broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the

formalities and accompanying legal protections of a contract." *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249 (2004). Thus, the key question is whether Baylock produced evidence of mutual assent to modify the terms of his existing compensation structure.

¶ 19    In support of his Wage Act claim for additional compensation, Baylock produced an email exchange between himself and Spurrier, in which Spurrier congratulated him on his first day's performance filling in for the F&I manager role, and she advised him that the sales he generated would go in his name rather than the employee who normally worked that position. At his deposition, Baylock testified that he also received verbal affirmations from Acia's managerial staff that the sales he generated at Toyota would go in his name. However, both pieces of evidence suffer from a common deficiency: there is no suggestion that anyone *agreed* that Baylock would be compensated a 17% commission on his sales. The 17% figure represents nothing more than Baylock's estimation of what he believes he should be paid. It does not appear anywhere as a term to which Acia agreed. This is problematic because the rate of commission is an essential term of a compensation agreement. See, *e.g.*, *David M. Kaufman Associates, Inc. v. Lake County Trust Co.*, 157 Ill. App. 3d 926 (1987); *O'Neil and Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill. App. 3d 11 (1977).

¶ 20    The lack of commission evidence is fatal to Baylock's claim because the "parties' failure to agree upon an essential term of a contract indicates that the mutual assent required to make a contract is lacking and, thus, there is no enforceable contract." *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1091 (2003). Baylock produced no evidence of an essential term, and it is not our role to supply it. *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill. App. 3d 11, 14 (1977) ("Where certainty is lacking in the essential terms of [a] contract, the court will not supply the

missing essential terms."). Because Baylock produced no evidence of an essential term, mutual assent was lacking, meaning there was no agreement under the Wage Act.

¶ 21    Moreover, though Baylock testified that he generated $169,477.85 in sales during the months he filled in for the F&I manager role, he did not aver that the sales he generated in any particular month were large enough to entitle him to a compensation higher than the $15,000 monthly guarantee (which he did receive each month he worked at Toyota).

¶ 22    Having concluded that Baylock failed to produce evidence of a modified compensation agreement because he did not introduce evidence of mutual assent, we need not consider the remaining elements of the Wage Act claim for additional compensation.

¶ 23    Baylock also contends that the circuit court erred in dismissing Baylock's retaliation claim under the Wage Act. The Wage Act provides a cause of action for employees who were retaliated against by their employers after complaining about unpaid wages. 820 ILCS 115/14 (c) (West 2021).  However, where "the record does not reflect any evidence that [defendant] failed to pay [p]laintiff[] 'in accordance with the provisions of [the Wage Act]'", retaliatory discharge claims cannot survive summary judgment. *Reid v. Neighborhood Assistance Corp. of America*, 2013 WL 1087557, at * 8 (N.D. Ill. Mar. 14, 2013). Here, Baylock has not shown the existence of an agreement for additional compensation, and it is undisputed that Acia paid him everything he was owed under his existing employment contract. Because Acia paid Baylock in accordance with the provisions of the Wage Act, Baylock's retaliation claim cannot survive summary judgment.

¶ 24                                    CONCLUSION

¶ 25    Baylock failed to demonstrate that there was a genuine issue of material fact, as he provided no evidence that his employer agreed to additional compensation, or that his termination was in

retaliation for his claim under the Wage Act. Accordingly, we affirm the circuit court's grant of Acia's motion for summary judgment.

¶ 26    Affirmed.