AMALGAMATED FINANCIAL CORPORATION *et al.*, Plaintiffs-Appellees, *v.* ATLANTIS, INC., *et al.*, Defendants-Appellants.

First District (1st Division)    No. 81-234

Opinion filed March 29, 1982.

Hanson and Shire, of Chicago (Chris Goodman, of counsel), for appellants.

Sloan and Connelly, of Chicago (Mark A. Moynihan, of counsel), for appellees.

JUSTICE McGLOON delivered the opinion of the court:

Amalgamated Financial Corporation brought an action against Union Realty Mortgage Corporation for tortious interference with a contract between Amalgamated and Atlantis, Inc. The trial court entered judgment upon a jury verdict in favor of Amalgamated and against Union Realty. Union Realty now appeals.

On appeal, Union Realty argues that: (1) the jury's finding that a

contract existed between Amalgamated and Atlantis was against the manifest weight of the evidence; (2) the jury's finding that Union Realty maliciously interfered with the alleged contract was against the manifest weight of the evidence; and (3) the trial court erred in denying its tendered instruction which would have advised the jury that interference with a contract is justified if it results from impersonal business reasons.

Atlantis, Inc. (Atlantis), was a Wisconsin corporation engaged in the business of real estate development. Amalgamated Financial Corporation (Amalgamated) was a finance broker whose principal business was obtaining loan commitments from financial institutions for clients for a fee. Union Realty Mortgage Corporation (Union Realty) was a corporation engaged in the business of providing mortgage financing. Phillip Lind was the president and Carl Schaffner was the vice-president of Atlantis. Maurice Katz was an executive vice-president of Amalgamated. Martin Graff was an employee of Union Realty.

In July of 1973, Atlantis was in need of financing to build a nursing home in Merrill, Wisconsin. Atlantis' agent Carl Schaffner contacted Maurice Katz of Amalgamated to assist Atlantis in obtaining a loan commitment for the construction project from a willing lender. Katz explained to Schaffner that in exchange for obtaining a loan commitment from a lender for the project, he would require a commission from Atlantis in the amount of 3% of the total loan if the lender charged Atlantis points for making the loan, or 5% if the lender did not charge any points.

Katz made several attempts to obtain a loan for Atlantis, but was unsuccessful until he contacted Martin Graff of Union Realty. Katz explained to Graff the nature of the construction project and the financing which would be required for such a project. He also explained to Graff the details of his commission fee agreement with Atlantis. After he studied the feasibility of Union Realty financing such a project, Graff telephoned Katz and asked him to arrange a meeting between him (Graff) and Atlantis at Union Realty's office. Katz arranged the meeting. Union Realty's representatives stated at that meeting that unless Atlantis agreed to certain terms, no loan commitment would be made. One of those terms required Atlantis to limit to 1% the amount of a commission fee to be paid Amalgamated. Atlantis and Union Realty entered into a loan agreement which contained the term.

Amalgamated and Katz brought an action against Union Realty and Atlantis. Prior to trial, Amalgamated and Katz took a voluntary nonsuit as to Atlantis pursuant to a covenant not to sue. The complaint against Union Realty alleged that Union Realty knowingly and without justification induced Atlantis to breach its agreement with Amalgamated.

The jury found Union Realty guilty of wrongfully inducing a breach of contract between Atlantis and Amalgamated for commission fees. A

judgment was entered upon the verdict and Amalgamated was awarded damages in the amount of $19,040. Union Realty appeals.

The essential elements of the tort of interference with contractual relations are (1) the existence of a valid and enforceable contract between plaintiff and another party; (2) defendant's knowledge of the existing contract; (3) an intentional and malicious inducement of a breach by defendant; (4) a subsequent breach by the other party to the contract; and (5) damages to plaintiff. (*Mitchell v. Weiger* (1980), 87 Ill. App. 3d 302, 304, 409 N.E.2d 38; *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 897, 275 N.E.2d 429.) The first two issues raised by Union in this appeal involve the first and third elements of the tort.

First, Union argues that the jury's finding that a contract existed between Amalgamated and Atlantis was against the manifest weight of the evidence. We disagree. The trial court record is replete with evidence supporting the existence of a valid and enforceable contract.

■■ Katz testified that he told Atlantis' agent Carl Schaffner that if he, Katz, obtained a loan commitment from a lender, he would charge a commission fee in the amount of 3% of the total loan if the lender charged Atlantis points, or 5% if the lender charged Atlantis no points. He further stated that Schaffner totally agreed to the terms of the commission fee contract. Although Schaffner did not testify, Atlantis' president Phillips Lind testified that there was a valid contract between Atlantis and Amalgamated. Additionally, Union Realty's own witness, Martin Graff, stated at trial that he was aware of the terms of the agreement between Atlantis and Amalgamated. Since both parties to the agreement stated that there was a contract and Union Realty's own witness admitted that there was an agreement, we cannot say that the jury's finding was against the manifest weight of the evidence.

■■ Second, Union Realty argues that the jury's finding that it maliciously induced a breach of the contract between Atlantis and Amalgamated was against the manifest weight of the evidence. In its brief, Union Realty misapprehends the meaning of the term "malice" when used in the context of the tort involved herein. It is not necessary to prove that defendant acted with ill will, hostility or an intent to injure. (See *Gorman Publishing Co. v. Stillman* (N.D. Ill. 1980), 516 F. Supp. 98; *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708.) It is only necessary to show that the defendant acted intentionally and without just cause. (See *W. P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615.) In the present case, Union Realty's interference clearly was intentional. Martin Graff testified that he was aware of the terms of the agreement between Atlantis and Amalgamated. Nevertheless, Union placed Atlantis in such a position that it could only obtain financing if it agreed to limit the commission to be paid Amalgamated to

1%. Since the interference was clearly intentional, the only remaining question is whether there was just cause for the interference.

Union Realty contends that its inducement of the breach of contract was "justifiable and grounded on sound business judgment." In essence, Union Realty argues that economic self-interest constitutes justification for inducing a breach of contract and is therefore a defense. The Federal District Court for the Northern District of Illinois recently addressed a similar argument.

■■ In *Gorman Publishing Co. v. Stillman* (N.D. Ill. 1980), 516 F. Supp. 98, a publishing company and one of its employees, Stillman, entered into a contract not to compete. Stillman terminated his employment with the publishing company and began working with Chilton, a competitor of the publishing company, thereby violating his agreement not to compete. The publishing company sued Chilton for tortious interference with contractual relations. Chilton argued that its conduct was justified by its desire to secure the benefit of Stillman's abilities. The court rejected Chilton's argument, finding that "[t]o hold otherwise would amount to holding that any interference with a contractual relationship is justified so long as it is beneficial to the interfering party." (516 F. Supp. 98, 106.) Similarly, we reject Union Realty's assertion that since its inducement of the breach of contract was grounded on sound business judgment, it was justified. In our opinion, it was incumbent on Union Realty to show something more than its economic self-interest as justification for inducing the breach of contract between Atlantis and Amalgamated.

Finally, Union Realty argues that the trial court erred in refusing to submit to the jury a particular jury instruction. The tendered instruction read: "The jury are instructed that if you find Union Realty interfered with the contract of Atlantis and the plaintiff, Amalgamated then you must determine if such interference was justified. Interference is justified if it results from impersonal business reasons." In light of our holding that economic self-interest alone is not a defense to interference with contractual relations, we find that it was not error for the trial court to deny Union Realty's tendered instruction.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.