BENJAMIN KRUGER, Plaintiff-Appellant, v. MENARD ELECTRIC CO-OPERATIVE *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0827

Opinion filed May 12, 1988.

Patrick J. O'Hara and Samuel S. Blane, both of Petersburg, for appellant.

Homer J. Tice, of Knuppel, Grosboll, Becker & Tice, of Petersburg, and D. Bradley Blodgett, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Benjamin Kruger filed a four-count complaint in the circuit court of Menard County against defendants, Menard Electric Cooperative and the seven individual members of the cooperative's board of directors (the cooperative). He alleged the cooperative was required by an agreement with Central Illinois Public Service Company (CIPS) to relinquish its admitted right to serve plaintiff with electricity and allow CIPS to do so. Count I sought a preliminary and a permanent injunction requiring the cooperative to relinquish its right to provide plaintiff with electric service, counts II and III sought damages for tortious interference with a business relationship and count IV sought damages for breach of contract. The cooperative filed motions to dismiss and after hearing the motions were granted. Plaintiff appeals

from the granting of the motions to dismiss. We affirm.

Menard County, Illinois, where plaintiff resides, is served by two electric suppliers, CIPS and the cooperative. It is unclear whether these two electric suppliers have entered into a service-area agreement dividing between themselves the service areas in the county pursuant to section 6 of the Electric Supplier Act (the Act) (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 406). Notwithstanding the existence of any such agreement, on April 20, 1987, CIPS and the cooperative purported to enter into a letter agreement whereby CIPS agreed to relinquish to the cooperative a residential customer which CIPS would be entitled to serve either because he was located in its agreed-upon service area or because he was located in a place served by CIPS on the effective date of the Act. (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 405.) The agreement provided that in return for the relinquishment of this customer to the cooperative by CIPS, the cooperative would agree to release "an equivalent customer to [CIPS] should similar conditions develop in the future."

On or about June 1, 1987, plaintiff, after receiving the consent of CIPS, requested the cooperative release him as a residential customer to CIPS. On June 9, 1987, the cooperative replied indicating it was entitled to plaintiff as a customer pursuant to the Act and would not release him to CIPS. On August 7, 1987, on behalf of plaintiff, CIPS sent a written request to the cooperative implicitly acknowledging the cooperative's entitlement to plaintiff as a customer but also noting the April 20, 1987, agreement between itself and the cooperative mentioned the relinquishment by the cooperative of an equivalent customer to CIPS and requested the cooperative to relinquish service to plaintiff as that equivalent customer. The cooperative refused, claiming plaintiff was not an equivalent customer. After this refusal plaintiff filed his complaint against defendants.

Defendant cooperative filed a motion to dismiss claiming the count for injunctive relief failed to state a cause of action on the grounds that the sole jurisdiction over the claims of the plaintiff lies with the Illinois Commerce Commission (the Commission) pursuant to the Act (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 401 *et seq.*), the complaint failed to allege the "agreement" between the cooperative and CIPS had been approved by the Commission as required by section 6 of the Act (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 406) and failed to allege sufficient facts to show plaintiff was a third-party beneficiary of the "agreement." The motion also claimed count II of the complaint failed to state a cause of action because there were insufficient facts to state a claim for tortious interference as there was no business rela-

tionship between the plaintiff and CIPS. Even assuming the validity of the agreement between CIPS and itself, plaintiff could not state a claim for tortious interference against one of the parties to that agreement. Finally, the motion claimed insufficient facts were alleged to show a breach of contract because plaintiff was not shown to have been a third-party beneficiary.

The trial court ruled the Commission had primary, if not exclusive, jurisdiction of the injunctive relief requested by plaintiff, plaintiff had no "reasonable expectation of *** a business relationship" with CIPS and, therefore, failed to state a cause of action for tortious interference with a business relationship and insufficient facts were alleged to establish a third-party beneficiary status upon plaintiff. The individual director defendants adopted the motion filed by defendant cooperative and count III for tortious interference against them was dismissed also.

■ Plaintiff has made no showing of his entitlement to the equitable relief requested in count I. The Commission is the proper forum for decisions on the validity and extent of service-area agreements between electric suppliers. This was recognized by the supreme court in *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Comm'n* (1979), 75 Ill. 2d 142, 387 N.E.2d 670. Sections 2 and 6 of the Act (Ill. Rev. Stat. 1985, ch. 111⅔, pars. 402, 406) together provide that service-area agreements control the rights of the parties to the agreements after they have been properly approved by the Commission. *Rural Electric*, 75 Ill. 2d at 146, 387 N.E.2d at 672.

The rationale behind giving primary jurisdiction to an administrative agency can be seen where that agency has been granted authority by the legislature over areas requiring the development of expertise and specialized knowledge. Having the agency with the technical expertise first review disputes rather than the courts promotes uniformity of decisions. (*Chicago & Eastern Illinois R.R. Co. v. Martin Brothers* (1980), 87 Ill. App. 3d 327, 334, 408 N.E.2d 1031, 1038.) Review is provided under the Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 412) through the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, pars. 3—101 through 3—112). The Commission's expert and specialized knowledge in the area of electric supplier service-area agreements in contrast to the lack of such knowledge in the conventional experience of most circuit judges points out the correctness of the circuit judge's decision here. Plaintiff must first bring his claim to the Illinois Commerce Commission and not the circuit court.

■ Plaintiff has premised his claim for tortious interference with a prospective business relationship upon the purported letter agree-

ment of April 20, 1987. To establish his claim he must show he has a reasonable expectation of entering into a valid business relationship, the cooperative knew of the expectancy and intentionally and maliciously interfered with the expectancy and that he was injured. (*Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.* (1983), 120 Ill. App. 3d 254, 258, 458 N.E.2d 115, 120.) We express no opinion on the validity of the purported agreement between CIPS and the cooperative as that is the province of the Commission. The circuit court's dismissal based on no reasonable expectation of a business relationship could also be supported, however, by the fact that plaintiff is not a third-party beneficiary of the purported agreement as will be explained below. The most glaring omission in plaintiff's complaint is the lack of any pleading of malice on the part of the cooperative. Without such an allegation, the claim cannot stand.

■ As to plaintiff's count for breach of contract, he must show the purported agreement was intended to benefit him as a third party. In order to do so, he must plead and prove his third-party beneficiary status is clearly identified in the contract and the benefit to him thereby is a direct one. (*Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 902, 466 N.E.2d 1040, 1044.) This he did not and could not do. There is nothing in the purported agreement of April 20, 1987, which directly benefited plaintiff nor does there appear any intent on the part of either the cooperative or CIPS to benefit any particular class of people to which plaintiff belongs. Any benefit to plaintiff is indirect only as the agreement seems to have been entered into by the parties in order to make a trade of "equivalent customers" benefitting themselves as opposed to benefitting any particular customer or class of customers. Therefore, the trial court was correct in dismissing plaintiff's count IV for breach of contract based on third-party beneficiary status.

For the foregoing reasons, the order of the circuit court of Menard County dismissing plaintiff's complaint in its entirety is affirmed.

Affirmed.

GREEN, P.J., and LUND, J., concur.