NORMAN ROY, a/k/a Whitey Roy, *et al.*, Plaintiffs-Appellants, v. PATRICK COYNE *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—91—1363

Opinion filed February 15, 1994.

HARTMAN, J., specially concurring in part and dissenting in part.

Ruff, Weidenaar & Reidy, Ltd., of Chicago (John J. Reidy, James R. Quinn, and Paula M. Carstensen, of counsel), for appellants.

Terrance A. Norton, and Katten, Muchin & Zavis, both of Chicago (Scott A. Kogen, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

In March 1988, plaintiffs Norman Roy, Roy Construction Company, Inc., Joseph Janas, and Janas Builders sold a home they had built in Lemont, Illinois, to defendants Patrick and Linda Coyne. According to plaintiffs, in September 1988, defendants informed them that they were dissatisfied with the home. The reason for the dissatisfaction stemmed either from a dislike of their new neighbors (plaintiffs' allegation), or was due to serious and dangerous building code violations (defendants' contention on appeal); the record, however, suggests that the true source of the disagreement concerns who would be responsible for landscaping a water retention pond behind defendants' newly purchased home.

On October 21, 1988, defendant Patrick Coyne tendered to plaintiff Norman Roy an offer to resell him the Lemont residence for $175,000. Plaintiffs alleged that Coyne informed Roy at that time that if he did not accept the offer to repurchase he would put plaintiffs out of business, and that after Roy rejected the offer to repurchase, the Coynes waged a willful campaign in order to destroy, and which did in fact destroy, plaintiffs' businesses. Defendants' "campaign" included the penning of letters to the editor of the local Lemont newspaper and statements made during an open meeting of the Lemont village board. Defendants contended that they acted in response to their fear that other homes in their housing development might contain many of the same building code violations which plagued their home.

Plaintiffs brought this action on December 15, 1988. Their first complaint alleged libel in its first count and tortious interference with business relations in the second count. The trial court dismissed count I of the complaint and granted plaintiffs' motion to dismiss count II with leave to amend. Plaintiffs then filed their first amended complaint alleging only libel, but that pleading was voluntarily withdrawn when plaintiffs substituted counsel and filed a second amended complaint.

Plaintiffs' second amended complaint contained five counts alleging libel *per se*, libel *per quod*, tortious interference with existing contracts, tortious interference with prospective business relationships and fraud. Defendants moved to strike the second amended complaint and obtained leave to file a counterclaim for breach of contract.

After a hearing on defendants' motion to strike the second amended complaint, the court granted the motion. In its order, dated August 31, 1990, the court discussed primarily the libel claims, holding that all the various examples of allegedly libelous communication pleaded therein, save one, were not defamatory because: one was not "of and concerning" plaintiffs; another was protected by the "innocent construction rule" and still others were privileged as fair comment or criticism. However, the court did not address fully the adequacy of the complaint with regard to the two tortious interference counts; instead, it appeared to be under the impression that these actions could lie only between two business competitors, and not between a customer and a seller. The court's order did not state that it was dismissing plaintiffs' second amended complaint with prejudice nor, pursuant to Supreme Court Rule 304(a), that there was no just reason to delay enforcement or appeal of the order. 134 Ill. 2d R. 304(a).

Plaintiffs filed, apparently without leave, a third amended complaint on October 1, 1990, wherein they realleged only tortious interference with existing contracts and tortious interference with prospective business relationships. On December 10, 1990, they sought leave to file that complaint *nunc pro tunc* October 1, 1990. At a hearing on defendants' section 2—615 motion to strike the third amended complaint, the trial court did not address the legal sufficiency of the pleading. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) Rather, it concluded that plaintiffs' cause of action sounded only in defamation. Consistent with that view and in light of plaintiffs' abandonment of their defamation count, the court dismissed their third amended complaint with prejudice.

I

■ As a preliminary matter, defendants assert that this case is not properly before us because plaintiffs did not expressly obtain leave to amend as required after the trial court dismissed the second amended complaint. Plaintiffs respond that they filed a motion seeking leave to amend *nunc pro tunc* October 1, 1990. While we agree with defendants that the record does not contain a written order granting plaintiffs' *nunc pro tunc* request, since the trial court held a hearing on the legal sufficiency of the third amended complaint, we may safely assume that it allowed plaintiffs to refile their complaint at least *sub silentio*. More important, the record discloses that defendants, at the hearing on their motion to strike the third amended complaint, admitted that the trial court granted leave to amend. Accordingly, the trial court's simple oversight of failing to grant expressly plaintiffs' motion seeking leave to amend should afford no comfort to defendants.

●2 Defendants also claim that the "law of the case" doctrine bound the trial court to its ruling of August 31, 1990, wherein it held that plaintiffs did not plead the elements of tortious interference with contracts or prospective opportunities. We reject this argument out of hand, however, as it constitutes a misstatement of the law— the law of the case doctrine binds the court only where its prior order was final and appealable. (*McDonald's Corp. v. Vittorio Ricci Chicago, Inc.* (1984), 125 Ill. App. 3d 1083, 1087, 466 N.E.2d 1116, 1119 ("The trial court order becomes the 'law of the case' *only* if there is a final and appealable order" (emphasis added)), citing *Arnold Schaffner, Inc. v. Goodman* (1979), 73 Ill. App. 3d 729, 392 N.E.2d 375.) Here, neither the trial court's August 31, 1990, order nor the memorandum accompanying it indicated that the complaint was dismissed with prejudice, nor did it contain the required language of

Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that no just reason existed to delay enforcement or appeal of the order. Therefore, the "law of the case" doctrine was inapplicable to plaintiffs' third amended complaint.

## II

Proceeding now to its merits, this appeal arises from the trial court's dismissal with prejudice of the plaintiff's third amended complaint pursuant to defendants' section 2—615 motion to strike and dismiss. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now codified at 735 ILCS 5/2—615 (West 1992)).) Our supreme court has identified the purpose of the motion to be that of pointing out defects in pleadings, thereby affording the complainant an opportunity to present a valid complaint through amendment. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 422, 430 N.E.2d 976, 983, citing *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 177, 360 N.E.2d 785, 789.) While the granting of a section 2—615 motion is within the sound discretion of the trial court, where a complaint does not allege a cause of action properly, the general course is to allow leave liberally to amend rather than to dismiss a claim with prejudice. *Knox College,* 88 Ill. 2d at 421, 430 N.E.2d at 983; see also *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307, 430 N.E.2d 1005, 1008 ("The purpose of pleadings is to present, define and narrow the issues and limit the proof needed at trial. [They] are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial").

A trial court acts within its discretion where it refrains from dismissing a cause of action with prejudice pursuant to a section 2—615 motion, except in those instances where it is evident that a plaintiff is incapable of alleging a set of facts which would merit recovery. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504-05, 565 N.E.2d 654, 657.) When reviewing the propriety of a trial court's granting the motion, we accept all well-pleaded facts as true and draw all reasonable inferences from those facts which are favorable to the nonmoving party. (*Burdinie,* 139 Ill. 2d at 504-05, 565 N.E.2d at 657; *Krasinski v. United Parcel Service, Inc.* (1988), 124 Ill. 2d 483, 485-86, 530 N.E.2d 468, 469; *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 389, 577 N.E.2d 1344, 1349.) As a consequence, we will affirm the trial court's dismissal of the cause of action only when we determine that the complaint, so viewed, does not state a claim upon which relief may be granted.

■ Here, plaintiffs' third amended complaint alleges that

defendants intentionally interfered with their existing contractual relations and their prospective business opportunities. The elements of the tort of intentional interference with existing contracts have been held to be:

" ' "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." ' " HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc. (1989), 131 Ill. 2d 145, 154-55, 545 N.E.2d 672, 676, quoting Prudential Insurance Co. v. Van Matre (1987), 158 Ill. App. 3d 298, 304, 511 N.E.2d 740, quoting Belden Corp. v. Inter-North, Inc. (1980), 90 Ill. App. 3d 547, 551, 413 N.E.2d 98, 101.

As for the elements of tortious interference with prospective business relations, our supreme court has recently stated:

"[The Illinois Supreme Court], though recognizing the tort of interference with prospective economic advantage ***, has never explicitly set forth the elements of that cause of action. It is generally recognized by the Illinois courts, however, that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship[1] ; and (4) damages to the plaintiff resulting from such interference. [Citations.]" Fellhauer v. City of Geneva (1991), 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878.[2]

---

[1]Because the Fellhauer court relies upon cases which make intentional and malicious interference an element of the interference torts, we assume that the supreme court was using the word "purposeful" merely as a synonym for "intentional and malicious." We note that "purposeful" has been used of late as a means of connoting both words. (See Restatement (Second) of Torts § 766, Comment j (1979) explaining that "intentional" and "improper" as used as elements of the interference torts are meant to imply that the actor conducted himself with the purpose of interfering with the business relations of another).) We will therefore ascribe no significance to the court's particular word choice in Fellhauer.

[2]As previously noted, the trial court here seemed to think that both of these actions can be asserted only by one business competitor against another, and that, therefore, plaintiffs were precluded from bringing this action against their former customers. In its August 31, 1990, order, the circuit court wrote:

Defendants do not contest the adequacy of the complaint as to all the elements of the torts. Rather, their arguments on appeal focus only on whether the third amended complaint sufficiently alleged the "intent" or "purpose" element of both of the interference torts.[3] They maintain that the complaint asserts mere generalities and conclusions, and they suggest that a sufficient allegation of "intent" would indicate that the defendants acted maliciously; additionally, it should include the statements defendants made which induced the breach, when these statements were made, and how the statements influenced others to breach contracts or how they destroyed expectancies. Plaintiffs counter by arguing that defendants' suggested allegations constitute evidentiary facts which are not required to be pleaded.

Defendants' argument is premised upon their unstated assumption that actual malice is a necessary element of the interference torts, and therein lies the first problem requiring resolution in this appeal. The issue of what elements are necessary to constitute these torts has caused considerable confusion in Illinois and in other jurisdictions as well. The Restatement (Second) of Torts traces this

"The essential difficulty with both Count III [tortious interference with existing contracts] and IV [tortious interference with prospective business opportunities] is that at bar we have a contest *not between two business firms vying for customers but a contest between a customer and a business*. The customers believe that they were dealt with unfairly by plaintiffs in the purchase of their homes and have sought to complain about grievances and to neighbors." (Emphasis added.)

Concededly, these two torts generally arise in a business context. (*E.g.*, *HPI Health Care*, 131 Ill. 2d 145, 545 N.E.2d 672 (tortious interference with contract action between a hospital and its pharmaceutical purveyor).) However, no authority holds that these two "business" torts may lie only as between competitors or business entities. See, *e.g.*, Restatement (Second) of Torts §§ 766 through 774A (1979) (omitting reference to business competition as an element throughout its chapter on the business interference torts); see also *Philip I. Mappa Interests, Ltd. v. Kendle* (1990), 196 Ill. App. 3d 703, 554 N.E.2d 1008 (in a tortious interference with contract action between property developer and homeowners, court attached no significance to the fact that defendants were homeowners and not competitors of plaintiff).

[3]Thus, defendants will be deemed to acknowledge the legal adequacy of the complaint as to the other elements of both torts. Since both torts share the same "intent" prong, our decision as to the adequacy of one count of plaintiffs' complaint addresses their other count as well. As a result, we will refer to the two torts generically as the "interference torts" throughout this opinion and resolve the issues arising from the two in unison.

confusion to two possible sources. (Restatement (Second) of Torts, Introductory Notes to ch. 37, §§ 766, 767 (1979).) First, the law in this area is relatively new. Interference with contractual relations was not actionable anywhere until 1853, when it was recognized as a tort in *Lumley v. Gye* (1853), 118 Eng. Rep. 749. The Illinois Supreme Court first accorded it status as a valid cause of action in 1898. (*Doremus v. Hennessy* (1898), 176 Ill. 608, 52 N.E. 924.) The Restatement posits that the relative novelty of these actions accounts for the reality that their procedural aspects, such as what must be pleaded as a constituent part of the *prima facie* case and what actually constitutes an affirmative defense to the tort, have yet to congeal fully. Restatement (Second) of Torts, Introductory Notes to ch. 37, §§ 766, 767 (1979).

Another source of the confusion stems from the poor word choice employed in *Lumley* (Restatement (Second) of Torts, Introductory Notes to ch. 37, §§ 766, 767 (1979)), in which case a competitor was found liable for "maliciously" inducing a renowned soprano to breach her exclusive services contract with a theater owner. (See W. Keeton, Prosser & Keeton on Torts § 129, at 980 (5th ed. 1984).) Malice, in its traditional sense, thus became an element of the tort when it was initially imported by courts in the United States. (Restatement (Second) of Torts, Introductory Notes to ch. 37, §§ 766, 767 (1979).) As the interference torts evolved, however, courts began to recognize that "malice" did not mean the literal "ill-will between the parties" malice, but merely "legal malice." (See 45 Am. Jur. 2d *Interference* § 3 (1969 & Supp. 1992).) However, this evolution was slow and did not occur uniformly. Consequently, in many jurisdictions today, lack of justification (as "legal malice" has been renamed) must be pleaded and proved by the plaintiff, while other jurisdictions hold that the presence of justification constitutes an affirmative defense which is incumbent on the defendant to plead and prove.

In the interference torts context, the disagreement among the different districts or panels of the appellate court of this State has focused on when and whether actual as opposed to legal malice is a required element of the torts. Compare *Boyd Real Estate, Inc. v. Shissler Seed Co.* (1991), 213 Ill. App. 3d 648, 571 N.E.2d 1171 (holding that a complaint alleging tortious interference did not state a cause of action because it failed to aver actual malice), *Kruger v. Menard Electrical Cooperative* (1988), 169 Ill. App. 3d 861, 865, 523 N.E.2d 708 (In affirming the trial court's dismissal of plaintiff's tortious interference with contract claim, the appellate court wrote: "The most glaring omission in plaintiff's complaint is the lack of any pleading of malice on the [defendants]"), *Clifton-Strode, No. 2, Inc. v.*

*Kent* (1982), 110 Ill. App. 3d 525, 528-29, 442 N.E.2d 666, 668 ("Malice is required in order to support a cause of action for tortious interference with a contract ***"), *Bergfeld v. Stork* (1972), 7 Ill. App. 3d 486, 490, 288 N.E.2d 15, 17 ("The third element of [tortious interference with existing contracts] requires that there be factual allegations from which it can reasonably be inferred that defendant's alleged acts were committed with malice ***"), with *Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 561 N.E.2d 1134 (rejecting contention that, in order to state a cause of action for the interference torts, a plaintiff need allege facts which imply that the defendant acted with actual malice), *Amalgamated Financial Corp. v. Atlantis, Inc.* (1982), 105 Ill. App. 3d 379, 381, 434 N.E.2d 417, 419 (holding that plaintiff need not prove malice to establish claim for tortious interference with contract, but only that the defendant acted intentionally and without justification), *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 552 n.1, 413 N.E.2d 98, 101 n.1 ("Some formulations of [tortious interference with contractual relations] include 'malice' as a necessary element, but 'malice' in this connection means only the intent to interfere without sufficient justification. [Citations.] The term 'malice' tends to be amorphous and misleading, and is better omitted"); see also *Clifton-Strode, No. 2, Inc. v. Kent* (1982), 110 Ill. App. 3d 525, 529, 442 N.E.2d 666, 668 (Heiple, J., concurring in part and dissenting in part) (asserting that in a tortious interference claim, plaintiff need only prove that defendant acted intentionally and without justification).

While this disagreement has continued in the appellate court, a subtle yet more fundamental problem with the Illinois explication of the elements of the interference torts has gone unnoticed, or at least unmentioned. Although the appellate court, nearly without exception, has concurred in the belief that a plaintiff must allege, at a minimum, that the defendant acted unjustifiably or, stated another way, that the lack of justification is an essential element of the torts of intentional interference with existing contracts and prospective business, the conclusion is irresistible that it is this allocation of the burden of proof as to justification in Illinois (and some other jurisdictions), and not which type of malice a plaintiff must allege, that is the fountainhead of the rampant confusion in this area of the law.

In response to our attempt to remedy the stark uncertainty which needlessly plagues this area of Illinois tort law, the dissent, albeit unwittingly, places us in exalted company with its characterization of our opinion as *"obiter dicta."* Innumerable are the courts before ours that have not been daunted when it came to addressing

questions they considered in need of answer even though those issues were not theoretically necessary to dispatch the dispute presented to them. (*E.g.*, *Marbury v. Madison*. (1803), 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (a decision which President Jefferson criticized as being "merely an *obiter* dissertation of the Chief Justice"), Jefferson to Justice William Johnson, June 12, 1823, 1 S. Car. His. & Gen. Mag. 1, 9-10 (1900), quoted in G. Gunther, Constitutional Law 12 (11th ed. 1985).) Significantly, the dissent does not, indeed, it cannot disagree that confusion abounds with respect to what needs to be pleaded and/or proved as to the interference torts; it simply rejects the opportunity to illuminate an area of the law that has become inexcusably obfuscated by unmindful adherence to clumsily formulated rules. We think it time to light a match rather than curse or, even worse, perpetuate the darkness.

A

■ We are of the firm opinion that the most effective way to rid ourselves of the dross in this area is to skim from the ingredients that make up the interference torts any mention of "unjustified" conduct as a *per se* element thereof. Under this sensible recognition of the components of the tort, a plaintiff would need to show only that a defendant intentionally induced another to breach a contract with him, or intentionally interfered with his future business prospects;[4] and whether a defendant was justified to interfere with the existing or future business relationships of another becomes an affirmative defense which he must plead and subsequently prove. Applying such a formula to this case, it would appear that plaintiffs not only stated a cause of action, which is the issue presented for our determination, but they have actually overstated it.

We note that only two Illinois cases, *Agrimerica, Inc. v. Mathes* (1990), 199 Ill. App. 3d 435, 449-50, 557 N.E.2d 357, 367, and *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 897, 275 N.E.2d 429, 433, have held that justification is an affirmative defense which a defendant bears the burden of proving. In *Agrimerica*, we held that the circuit court erred by requiring the plaintiff to plead and prove lack of justification as an element of tortious interference. In the words of the *Agrimerica* court:

---

[4]We emphasize that while our discussion focuses solely on the "intent" aspect of the interference torts, it must be understood that we do not intend to imply that plaintiffs need to prove only this element in order to make out a *prima facie* case for the interference torts. Even under the formulation we endorse today, plaintiffs must still establish all of the other elements of the torts as they are generally accepted in Illinois. The sole element with which we take issue is the "intentional and unjustified" prong discussed above.

"With respect to the requirement of malice, mentioned by the circuit court here, the term is often included as an element for tortious interference with a contract, but simply means an attempt to interfere without sufficient justification. [Citations.] Evidence of ill-will, spite or hatred is not required. [Citations.] Justification in this context is an affirmative defense. (*Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 897, 275 N.E.2d 429.)" *Agrimerica*, 199 Ill. App. 3d at 449-50, 557 N.E.2d at 367.[5]

However, prior to espousing that rule, both cases adhere, unintentionally no doubt, to the pre-existing requirement of the interference torts that a plaintiff must plead and prove that the defendant acted without justification. As a consequence of their oversights, *Agrimerica* and *Zamouski* are internally inconsistent.[6] *Agrimerica* defined the elements of the tort to include "defendant's intentional and unjustified inducement of the breach of the contract." (*Agrimerica*, 199 Ill. App. 3d at 449, 557 N.E.2d at 367.) Thus, under *Agrimerica*'s schema of the tort, the plaintiff must prove as a part of his *prima facie* case that the defendant acted without justification, while at the same time, the defendant proves as an affirmative defense that she was justified in inducing another to breach the contract. *Zamouski*, upon which *Agrimerica* relied, likewise states that justification is an affirmative defense, but it defines the tort of interference to include "[i]ntentional and malicious inducement of the breach." (*Zamouski*, 1 Ill. App. 3d at 897, 275 N.E.2d at 433.) As explained above, to allege and later prove "malicious" conduct, plaintiff would need to show, at the very least, a lack of justification therefor. Accordingly, no amount of complaining about pedantry and prolixity can obscure the fact that we may not, in a case where our task is to determine whether plaintiffs state a cause of action, which necessarily requires a consideration of what they must plead and therefore prove, simply cite those cases and conclude our analysis oblivious to their glaring contradictions, despite the invitation of the dissent to do just that.

---

[5]*Zamouski* relies on no Illinois law in support of its approach. Instead it cites American Jurisprudence Second and *Herron v. State Farm Mutual Insurance Co.* (1961), 56 Cal. 2d 202, 363 P.2d 310, 14 Cal. Rptr. 294.

[6]We are aware of no instance, and the dissent offers us no example, to say nothing of authority, where something which is indisputably an element of a tort nevertheless need not be proved by a plaintiff before she will be entitled to damages for that civil wrong. At this late date, it requires no citation of authority to support the proposition that where an element of a tort is recognized as such, it must be pleaded and proved by the plaintiff, who bears the burden of establishing the tort.

In their treatise on Illinois tort law, Professors Polelle and Ottley theorize that the problems endemic to this area of Illinois law, such as those found in *Zamouski* (and *Agrimerica,* which cites it as authority), are the by-product of the confusion sown by the failure of our courts to recognize that justification is an affirmative defense and that the onus of pleading and proving the lack thereof should be placed not on the plaintiff but upon the party best suited to bear it: the defendant. (M. Polelle & B. Ottley, Illinois Tort Law 343 (1985), 55 (Supp. 1992).) They suggest that the indefensible but logical extreme of Illinois' rule allocating proof of the absence of justification to the plaintiff would

> "put a plaintiff in the virtually impossible position of trying to prove the negative of a proposition. Complaints would be unduly prolonged by seriously requiring that a plaintiff run down the list of all possibly applicable privileges as developed by case law and then negate them before the defendant has even mentioned any of them by motion or answer. It is conceptually the same as if one were to require, contrary to the actual state of the law, that a plaintiff must negate in the complaint a statute-of-frauds defense or a statute-of-limitations defense when suing for breach of an oral contract even before the defendant raises those defenses in response to the complaint." (M. Polelle & B. Ottley, Illinois Tort Law 342 (1985).)

We agree, and we believe that these paradoxes can be avoided by finally making sense of the elements of the interference torts, thereby adopting a slightly modified version of *Agrimerica*'s obviously intended holding that the presence of justification is an affirmative defense; moreover and most important, the absence of justification unequivocally is *not* an element of the plaintiff's *prima facie* case.

Surely, this view of privilege or justification is palpably more consistent with the nature of affirmative defenses than with that of an element of a tort. The common law analogue of the modern-day affirmative defense was a plea of confession and avoidance "which, as the term indicates, confessed the validity of the plaintiff's prima facie case but asserted new matter which avoided its legal effect." (3 R. Michael, Illinois Practice § 25.3, at 418 (1989).) Where a defendant in a tortious interference action asserts that he is privileged, he is, in effect, asserting that even if he intentionally caused the breach of another's contract or had deliberately interfered with the plaintiff's prospective business opportunities, given the importance of the privileged conduct, the plaintiff is not entitled to prevail in the action. Since justification is an affirmative defense, the burden of pleading and proving it rests with defendants. (See Ill. Rev. Stat. 1991, ch. 110,

par. 2—613(d) (now codified at 735 ILCS 5/2—613(d) (West 1992)) (providing, *inter alia*, that defendant must plead "any defense which by *** affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint"); see also Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9) (now codified at 735 ILCS 5/2— 619(a)(9) (West 1992)).) Accordingly, we see no basis for imposing on plaintiffs an obligation to anticipate such a defense by stating in their complaint that defendants acted without justification.

We note that no modern supreme court case deters our taking the position we advance today. Although its two most recent decisions discussing the substantive elements of the interference torts, to which we have alluded above, draw extensively from the appellate court cases which cite "intent to interfere without justification" as a component of those torts, neither of those cases states that these are the correct exposition of their elements; in fact, the supreme court studiously avoids adopting as its own the appellate court's recitation of what the ingredients are. See *HPI Health Care*, 131 Ill. 2d at 154- 55, 545 N.E.2d at 676 ("[The supreme court] has never explicitly set out the elements of the tort of intentional interference with existing contract rights. However, it is generally recognized in Illinois that the elements of this tort are: '*** (3) the defendant's intentional and unjustified inducement of a breach of the contract ***' "); *Fellhauer*, 142 Ill. 2d at 511, 568 N.E.2d at 878 ("This court [(the Illinois Supreme Court)], though recognizing the tort of interference with prospective economic advantage in an employment relationship [citation], has never explicitly set forth the elements of that cause of action. It is generally recognized by the Illinois courts, however, that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove ***"). Thus, there exists no binding precedent which would inhibit our straightforward approach to what the interference torts are comprised of, for our supreme court has yet to say expressly what *it* deems the elements to be.

Moreover, we read in the interstices of *HPI Health Care* ample support for today's holding. The supreme court there stated:

> "[W]here the conduct of a defendant in an interference with contract action was *privileged*, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious. [Citations.] The term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without justification. [Citation.] Therefore, before we can determine who has the burden of pleading justification (or a lack thereof), we must first decide whether the defendant's conduct here was protected by a *privi-*

*lege."* (Emphasis added.) *HPI Health Care,* 131 Ill. 2d at 156-57, 545 N.E.2d at 677.

This language certainly does not foreclose the possibility that justification can be an affirmative defense to the interference torts, rather than an absence of justification being an essential element of both torts. By conceding that a determination of who has the burden of pleading justification (or lack thereof) must be made in every case, the supreme court clearly contemplated that a defendant may have to show justification in some instances. Given the facts of that particular case, however, such a showing was not required of the defendant because the corporate officer privilege was evident on the face of the complaint. The *HPI Health Care* court therefore required the party who had alleged the facts disclosing it to overcome the privilege which the plaintiff's averments had implicitly admitted could serve to justify the defendant's interference. It does not logically follow from that result that lack of justification must, in all cases, be pleaded by plaintiffs.

This approach to the holding of *HPI Health Care* also explains the court's decision in *Fellhauer.* There, the plaintiff's complaint indisputably established that the defendant was the mayor of a municipality who, by terminating the plaintiff, an at-will employee of the town, interfered with what plaintiff characterized the prospective business opportunities he expected to derive from his continued employment. It was evident, however, that the mayor discharged the plaintiff while relying on the protection of the statutory privilege granted to municipal officers by section 3—11—1 of the Illinois Municipal Code. (Ill. Rev. Stat. 1987, ch. 24, par. 3—11—1 (now codified at 65 ILCS 5/3—11—1 (West 1992)).) Because the plaintiff pleaded facts which impliedly gave rise to an appropriate privilege, the *Fellhauer* court concluded that it became his burden to plead that the defendant's interference with his business relationship was unjustified.

We consider the clear and unmistakable holdings of both *HPI Health Care* and *Fellhauer* to be that where the complaint establishes the existence of a privilege, the plaintiff must plead and later prove that defendant acted unjustifiably, *i.e.,* inconsistent with his privilege. However, if the complaint may not fairly be said to introduce the existence of a recognized statutory or common law privilege, it is not the duty of the plaintiff to plead and prove lack of justification, but it becomes the defendant's burden to plead and prove the privilege as an affirmative matter, for there may be no way for a plaintiff to know in advance whether the defendant enjoys a privilege or, indeed, whether he will ever claim that he does. The existence of a

privilege will frequently turn on factors which a plaintiff cannot reasonably be expected to know. For example, the claimant of the affirmative defense of justification may be able to base it on advice of counsel, administrative practice, or some other factor of which only he is aware. See *Gomez v. Toledo* (1980), 446 U.S. 635, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (allocating to a § 1983 defendant the burden of pleading qualified immunity and explaining that it did so for the reasons discussed above).

To impose the pleading burden on the plaintiff would ignore these elementary facts and be contrary, as we have already noted above, to the established practice in analogous areas of the law. As then-Dean Clark, considered to be the father of the Federal Rules of Procedure, and later a judge of the United States Court of Appeals for the Second Circuit, stated over a half-century ago:

> "It seems to be considered only fair that certain types of things which in common law pleading were matters in confession and avoidance—*i.e.*, matters which seemed more or less to admit the general complaint and yet to suggest some other reason why there was no right—must be specifically pleaded in the answer, and that has been the general rule." ABA, Proceedings Institute at Washington and Symposium at New York City on the Federal Rules of Civil Procedure 49 (1939), quoted in *Gomez*, 446 U.S. at 641 n.8, 64 L. Ed. 2d at 578 n.8, 100 S. Ct. at 1924 n.8.

See also Fed. R. Civ. P. 8(c) (prescribing that a defendant must plead any "matter constituting an avoidance or affirmative defense"); 5 C. Wright & A. Miller, Federal Practice & Procedure § 1271 (2d ed. 1990).

Applying the rule deducible from *HPI Health Care* and *Fellhauer* to the case at bar, since the instant complaint does not assert or imply that defendants acted pursuant to any privilege while interfering with plaintiffs' business relationships, it is incumbent on defendants to justify their actions, for a determination of the issue in *this* appeal is, as has been shown, umbilically related to what defendants need to plead and therefore prove. With that burden now shouldered by defendants, we are constrained to reverse and remand for further proceedings the circuit court's determination that plaintiffs' third amended complaint did not state causes of action with regard to the intentional interference torts.

### B

■ Moreover, even if we were to adhere to the previous formulations of the interference torts referred to above, we would nonetheless reverse the trial court's dismissal of this action because we discern in the third amended complaint facts adequate to plead a cause of action

for both of the interference torts. As we have previously noted herein, defendants contend that the complaint was inadequate because it did not allege facts from which we could infer that they acted with "actual malice" toward plaintiffs. But, as we have already seen, our supreme court has now squarely rejected the premise that a plaintiff in a tortious interference action must plead and prove that the defendant acted with the traditional ill-will malice. In *HPI Health Care* (131 Ill. 2d 145, 545 N.E.2d 672), the court approved *Belden Corp.*'s rejection of "ill-will" malice as an essential element of the business interference causes of action. The court wrote in *HPI Health Care*: "The term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without justification." (*HPI Health Care*, 131 Ill. 2d at 156-57, 545 N.E.2d at 677, citing *Belden Corp. v. InterNorth, Inc.*, 90 Ill. App. 3d at 552 n.1, 413 N.E.2d at 101 n.1.) Therefore, we are concerned only with whether plaintiffs' third amended complaint alleged facts sufficient to demonstrate that defendant acted intentionally and lacked justification, and we need not concern ourselves as to whether it averred any animosity or other manifestations of ill-will between the parties.

Our supreme court has offered two possible means of determining whether a defendant was justified in his actions to interfere with a plaintiff's existing and future business relations. The first looks to balance the plaintiff's right to contract against the conduct of the defendant which caused interference with that right. The second approach ignores the subject matter of the contract interfered with and looks only to the motivation for the defendant's action.

Under its first approach, the court explained that "[t]he purpose of imposing liability in tort upon persons who interfere with the contractual relations of others is to protect one's interest in his contractual relations against forms of interference, which, on balance, the law finds repugnant." (*Swager v. Couri* (1979), 77 Ill. 2d 173, 190, 395 N.E.2d 921, 928, citing *Doremus v. Hennessy* (1898), 176 Ill. 608, 615, 52 N.E. 924.) *Swager* instructs us that this determination turns on "whether protection of the particular contractual interest at issue merits prohibition of the particular conduct at issue." *Swager*, 77 Ill. 2d at 190, 395 N.E.2d at 928.

Under the second view, the court in *HPI Health Care* reasoned that one may permissibly interfere in the business relations of another "where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." (*HPI Health Care*, 131 Ill. 2d at 157, 545 N.E.2d at 677.) This modern approach, without expressly rejecting the

balancing method of *Swager*, bases the justification for defendant's conduct solely on defendant's action, paying no attention to the subject matter of the contract with which defendant interfered.

Although we appreciate that, in some instances, which of the two supreme court tests we employ could prove dispositive of the outcome in a particular case, that is not true here because under either approach plaintiffs have sufficiently alleged that defendants interfered with both their contractual and prospective business relationships without adequate justification. Both counts of the third amended complaint asserted that defendants acted "intentionally, maliciously and willfully, and without lawful justification." Considered alone, these are mere conclusions which do not factually allege that defendants acted intentionally and without justification. "A bare assertion that an act was done maliciously or with a certain purpose or intent is insufficient where there is no statement of facts that shows such purpose or intent." *Skopp v. First Federal Savings* (1989), 189 Ill. App. 3d 440, 449, 545 N.E.2d 356, 362.

However, when those allegations are considered in light of the fact-based assertion in plaintiffs' complaint that defendant Patrick Coyne threatened the future of plaintiff Roy's business if he did not repurchase defendants' home, the third amended complaint adequately charged that they acted with the intent to interfere with plaintiffs' existing contracts and prospective economic opportunities. Furthermore, that complaint averred that Patrick Coyne interfered with plaintiffs' business because he did not like his new neighbors. Assuming the truth of these assertions, as we must for section 2—615 purposes, Patrick Coyne clearly interfered with plaintiffs' contractual relations and business opportunities without justification. Applying *Swager*'s balancing test, the law surely values plaintiffs' right to develop properties and sell homes to a greater degree than it values defendants' choice of extrajudicial attempts to remedy ill-chosen home purchases. On balance then, defendants were not justified in interfering with plaintiffs' present and future business relationships.

Moreover, even under the more permissive test of *HPI Health Care*, defendants' actions, as alleged in the third amended complaint, were unjustified. The law has yet to recognize dissatisfaction with a newly purchased home as an interest so highly prized that it alone could justify an otherwise tortious interference with a business relationship. Consequently, we hold that plaintiffs' third amended complaint alleged facts sufficient to demonstrate that defendants' interference was intentional and without justification. Thus the trial court erred when it granted defendants' section 2—615 motion and dismissed plaintiffs' causes of action with prejudice. See *Idlehour*

*Development Co. v. City of St. Charles* (1980), 88 Ill. App. 3d 47, 409 N.E.2d 544 (finding that a bare allegation that the defendants acted without justification was sufficient to state a claim for tortious interference where the complaint also demonstrated the existence of personal animosity between the plaintiff and the defendants, who were town officials).

■ Defendants lastly argue that because they informed the public about serious health and safety violations, they were privileged to interfere with plaintiffs' contracts and future business relationships. This court has held that the privileges applicable to defamation actions can serve to justify defendants' interference with the business relations of another. (*Philip I. Mappa Interests, Ltd.*, 196 Ill. App. 3d 703, 554 N.E.2d 1008.) The conditional privilege that would pertain to this case was the protection provided by the law to fair comment and criticism on matters of public concern. However, our review of the third amended complaint discloses no allegations of fact which give rise to any such privilege. An assertion that defendants made any comments to anyone other than plaintiffs appears nowhere, either expressly or implicitly, in the third amended complaint. The facts as alleged in that pleading show that defendants communicated their threats only to plaintiffs. The complaint did not demonstrate that defendants acted in the interest of the public, but merely to advantage their own self-interest; therefore, the "fair comment and criticism" privileges would not shelter defendants in this context.

Defendants seek to avoid this intractable problem by intimating in their brief that the privilege attached to the statements and conduct alleged in the second amended complaint. The trial court found that those statements gave rise to the various privileges defendants state were applicable here. But, the second amended complaint was stricken pursuant to defendants' section 2—615 motion and thereafter amended; moreover, the third amended complaint did not incorporate any part of the second nor even refer to it. "Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272, 193 N.E.2d 833.) Accordingly, defendants' attempt to reweave the privileges apparent on the face of the second amended complaint into the fabric of the third is incorrect and properly ignored by this court.

For the foregoing reasons, the judgment of the circuit court is reversed and the action is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

DiVITO, J., concurs.

JUSTICE HARTMAN specially concurring in part and dissenting in part:

While concurring in the result reached by the majority in this case, I find it both unnecessary and undesirable to undertake a "restructuring of the elements of this tort" which the majority purports to do in its pedantic and prolix treatment of this subject. Accordingly, I dissent from this portion of the opinion.

As the majority notes, "[d]efendants do not contest the adequacy of the complaint as to all elements of this tort. Rather, their arguments on appeal focus only on whether the third amended complaint sufficiently alleged the 'intent' or 'purpose' element of both of the interference torts." (259 Ill. App. 3d at 275-76.) The rule has long been established that reviewing courts should not extend their opinions beyond the issues presented to the court for decision on appeal. This rule was recently repeated in *Wysocki v. Reed* (1991), 222 Ill. App. 3d 268, 279, 583 N.E.2d 1139, where the court wisely observed: "[a]s a general rule, reviewing courts, particularly intermediate reviewing courts, should be reluctant to expand their holdings beyond those necessary to decide the particular facts before them. *** [W]e hold that resolution of the question [not raised in the appeal would be *obiter dicta* and] *** must wait for another day and another case." We should follow that sage advice in this case, even though the majority seems to equate itself with the United States Supreme Court and this case with the importance of *Marbury v. Madison* (1803), 5 U.S. (1 Cranch) 137, 2 L. Ed. 60.

The majority in the instant case creates the strawman of whether the plaintiff should be required to both "plead and prove" the absence of justification on a defendant's part. None of the cases in which the majority purports to reconstitute the elements of the interference torts, *Agrimerica, Inc. v. Mathes* (1990), 199 Ill. App. 3d 435, 557 N.E.2d 357, *appeal denied* (1990), 135 Ill. 2d 553, 564 N.E.2d 834, *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429, *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 545 N.E.2d 672, and *Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 568 N.E.2d 870, considers the issue of whether a plaintiff must both "plead and prove" the presence or absence of justification. Indeed, as the majority itself notes, both *Agrimerica* and *Zamouski* have *held* that the presence or absence of justification is an affirmative defense which must be proved by a defendant. (*Agrimerica*, 199

Ill. App. 3d at 449-50; *Zamouski*, 1 Ill. App. 3d at 897.) Simply recognizing the elements of a tort does not necessarily, and did not in the foregoing cases, allocate to either party the burden of proof. There simply is no "abounding confusion" as suggested by the majority.

Accordingly, although I admire and respect the majority's effort to contribute to the literature of the law, I am unable to subscribe to and dissent from the *obiter dicta* propounded in the opinion and suggest that "we hold that resolution of the question *** for another day" (*Wysocki*, 222 Ill. App. 3d at 279) and in an actual case, if one ever arises.